542 So.2d 122 (1989)
Richard ROSER and William H. Daigle
v.
Charles Hugh WEBB and Marjorie Russel Webb.
No. CA 88 0215.
Court of Appeal of Louisiana, First Circuit.
April 11, 1989.
*123 Robert L. Kleinpeter, Baton Rouge, for Richard Roser, et al.
Harry L. Shoemaker, III, Baton Rouge, for Charles Webb, et al.
Before CARTER, LANIER and LeBLANC, JJ.
LeBLANC, Judge.
This appeal arises from the issuance of a writ of quo warranto which ordered defendants to relinquish the control of a closely-held corporation to plaintiffs.
In 1985, plaintiffs, Richard Roser and William H. Daigle, sold all of the outstanding shares of stock (1000) in All Star Coffee Service, Inc. to defendants, Charles Hugh Webb and Marjorie Russel Webb. The total cost of the stocks was $235,000.00. In consideration for the sale, defendants paid plaintiffs $50,000.00 in cash and executed three promissory notes which were secured, in part, by a pledge of the 1000 shares of stock in All Star Coffee.[1] Subsequently, defendants failed to make payments on the notes. Plaintiffs filed suit against the Webbs by executory process, seeking to have the pledged stock seized and sold to enforce payment on the notes. Defendants petitioned the trial court to enjoin the sheriff's sale but relief was denied. Pursuant to the petition for executory process, the 1000 shares of stock in All Star Coffee were seized during the latter part of 1986 and subsequently sold by judicial sale to plaintiffs on September 2, 1987. However, when plaintiffs attempted to gain control of the corporation, pursuant to a corporate resolution approved by plaintiffs, defendants refused to surrender their control of the corporate offices, books and assets.
On July 15, 1987, after the seizure of the corporate stock but prior to the judicial sale, the Webbs drafted an "Articles of Amendment to the Articles of Incorporation of All Star Coffee Service, Inc." which provided for an increase in the number of shares of authorized capital stock that the company could issue from the previously authorized 1,000 shares to 15,000 shares. On July 20th, 1987, the Webbs executed a "Consent Resolution of the Shareholders and Board of Directors of All Star Coffee Service, Inc." which authorized the corporation's issuance of 11,500 new shares of common stock. Two bills of sales were executed to effect a sale of the stock to the Webbs; one bill of sale provided for the issuance of 5,750 shares to Mr. Webb in consideration of past services rendered and $1,000.00 cash and the other bill of sale provided for the issuance of 5,750 shares to Mrs. Webb in consideration of past services rendered and $1,000.00 cash. Next, defendants refused to surrender control of the corporation to plaintiffs, claiming that they were the owners of a majority (11,500 of 12,500) of the shares of stock of All Star Coffee based on the transactions of July 15th and July 20th, 1987.
On September 17, 1987, plaintiffs filed an "Application for Writ of Quo Warranto", claiming that the defendants did not have the authority to maintain control of the corporation. Following a hearing in this matter, the trial court ruled in favor of plaintiffs and ordered the defendants to relinquish the offices, any positions as officers, all books, papers, and assets and deliver them to plaintiffs.[2] In oral reasons, the trial court determined that after the seizure of the 1,000 shares of stock, defendants did not have the authority to hold corporate meetings or to vote the 1,000 shares of stock. Thus, the court found that plaintiffs, as owners of the initial 1,000 shares of the corporate stock, owned all of the stock that was lawfully issued by the corporation and, therefore, should have control of the corporation and its assets.
*124 Subsequently, defendants filed a suspensive appeal. After defendants failed to post the suspensive appeal bond, the appeal was maintained as a devolutive appeal. Thereafter, defendants complied with the writ of quo warranto.[3] On appeal, defendants seek to have the judgment of the trial court reversed. They request that this court deny the writ of quo warranto and reinstate them in their former positions as stockholders, directors and officers of All Star Coffee with control of the corporation and its assets.
Defendants only assignment of error on appeal is that the trial court erred in finding that the judicial seizure of the pledged stock deprived the defendants of their voting rights with respect to the 1,000 shares of stock.
La.Code Civ.P. art. 3901 defines quo warranto, in pertinent part, as "a writ directing an individual to show by what authority he claims or holds ... office in a corporation.... Its purpose is to prevent usurpation of office or of powers." The respondent in a quo warranto proceeding has the burden to show by what authority he claims or holds office in a corporation. International Stevedores, Inc. v. Hanlon, 499 So.2d 1183 (La.App. 5th Cir.1986), writ denied, 501 So.2d 230 (1987).
Since defendant's claim to control of the corporation is contingent upon the validity of the corporation's issuance of the 11,500 shares of stock to defendants, we find that defendant has the burden of establishing that this transaction was valid.
Defendants contend that their execution of the consent resolutions was sufficient to effect the issuance of additional stock, based on their 100 percent ownership of the corporation's stock at the time of the transactions in question. They allege that the seizure of the stock had no effect on their shareholder's rights to vote the stock.
We find no authority which specifically addresses the effect that a judicial seizure of stock has upon a shareholder's voting rights. However, in the present case, the relationship between plaintiffs and defendants as obligees and obligors pursuant to the contract of pledge is crucial in determining whether the defendants' action of issuing additional stock is valid.
The following general contract and obligation principles are applicable to the facts of the present case:
Good faith shall govern the conduct of the obligor and the obligee in whatever pertains to the obligation. La.Civ.Code art. 1759
... Contracts must be performed in good faith. La.Civ.Code art. 1983
When the obligation is subject to a term and the obligor fails to furnish the promised security, or the security furnished becomes insufficient, the obligee may require that the obligor, at his option, either perform the obligation immediately or furnish sufficient security. The obligee may take all lawful measures to preserve his right. La.Civ.Code art. 1783
When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. La.Civ.Code art. 2046.
When defendants executed the pledge agreement with plaintiffs, all parties clearly intended that 100 percent of the stock of the corporation was to be held by plaintiffs to secure payment by defendants on the principal obligation represented by the promissory notes.
Although there are no provisions in the pledge agreement that specifically prohibited the issuance of additional corporate stock by defendants, the articles of incorporation in effect when the pledge agreement was executed only authorized the issuance of the original 1,000 shares of stock. Thus the pledge of the stock represented 100 percent of the assets of the corporation as security for the principal obligation. See, Gibson v. Manuel, 534 So.2d 199 (Miss. *125 1988).[4]
Based on La.Civ.Code arts. 1759 and 1983, we find that defendants were bound to a good faith performance of the pledge obligation. Furthermore, we find that since defendants made no effort to pay to plaintiffs the amounts due to them on the promissory notes, we find that they were obligated to maintain the value of the pledged stock. See, La.Civ.Code art. 1783.
If defendants' transactions are given effect, the stock pledged by defendants to plaintiffs would represent only 8 percent of the total corporate stock. Without question, the July 15, 1987 transactions of the defendants were performed in bad faith and for the primary purpose of impairing the value of the pledged stock, in order to prevent plaintiffs or a third party from gaining control of the corporation. Therefore, we find that the defendants' actions of amending the corporation's articles of incorporation and issuing additional stock to themselves are null and void.
Since the corporation's issuance of the additional 11,500 shares was invalid, we find that defendants do not have any authority by which they can claim control of the corporation. Therefore, we find that the trial court's issuance of the writ of quo warranto ordering defendants to relinquish control of the corporation and its assets was proper.
For these reasons, the judgment of the trial court is affirmed. All costs of this appeal are to be paid by defendants.
AFFIRMED.
LANIER and CARTER, JJ., concur in the result.
NOTES
[1] The pledge agreement expressly provided that Roser and Daigle relinquished the right to vote the pledged stock.
[2] The trial court also ordered an accounting of the operation of the corporation from the date of the judicial seizure of the stock to the date of the transfer of control of the corporation to plaintiffs.
[3] Plaintiffs-appellees argue that the defendants' compliance with the writ of quo warranto constituted an acquiescence in the judgment and that defendants' appeal is moot. We find no merit in this argument.
[4] In Gibson, the Mississippi Supreme Court held that a broadcasting corporation's officer and controlling shareholder had a duty to the pledgee, who held a pledge of all outstanding shares of the corporation, not to loot the corporation by selling the corporation's most valuable asset; its license to transmit.