FORET, Judge.
This case involves two declaratory actions filed by Restaurant Management Systems, Inc. (RMSI) and Michael Hyde to determine the ownership of 32.5% of the voting stock in RMSI. The stock in dispute was transferred from William Hyde to Mary Olga Hyde pursuant to a community property agreement.
The trial court previously ruled, pursuant to a quo warranto proceeding[1] filed by William Hyde that the stock transfer from William to Mary was incomplete for failure to comply with the provisions of RMSI’s Corporate Buy-Out Agreement.[2]
*729 The trial court, by declaratory judgment, found that all the requirements of the Corporate Buy-Out Agreement have now been satisfied and that the disputed 32.5% of the voting shares of RMSI have been validly transferred to Mary Olga Hyde, who is now the recognized owner of said shares. Michael Hyde, appellant herein, appeals from the judgment of the trial court.
FACTS
A summary of the procedural and historical background of this case is necessary for an understanding of the issues presented.
RMSI was formed for the purpose of owning a subsidiary corporation in Texas, which Texas corporation owns and operates two Burger King Restaurants in Beaumont, Texas. The stock of RMSI was owned by two brothers, Michael and William Hyde. William initially owned seventy-five percent (75%) of the issued and outstanding common voting shares of RMSI, with Michael receiving twenty-five percent (25%) thereof. Subsequent thereto, William transferred to Michael another ten percent (10%) of his previously-issued voting common shares. At the time of William’s divorce from his wife, Mary Olga Hyde, he owned sixty-five percent (65%) of the common outstanding voting shares of RMSI, and Michael owned thirty-five percent (35%) thereof.
William and Mary Olga Hyde were divorced by final decree on August 13, 1987. Pursuant to the divorce and their community property settlement, Mary was to receive one-half (V2) of William’s sixty-five percent (65%), or 32.5%, of the common outstanding voting shares of RMSI. It is this transfer of 32.5% of the shares of RMSI stock which has sparked this litigation.
The procedural history of this litigation can be condensed to the following:
1.There is present litigation pending in Texas in which William Hyde seeks to have Michael Hyde removed as an officer, agent, or employee of RMSI and to require Michael to tender his shares of stock in the corporation. This proceeding has been abated pending a determination in Louisiana as to who is the owner of the stock which William Hyde sought to transfer in his divorce settlement with Mary Olga Hyde.
2. William Hyde filed a writ of quo war-ranto in Louisiana alleging that Michael Hyde was wrongfully usurping the office of Vice President and Director of RMSI. William asserted that Mary Olga Hyde was the holder of one-half (½) of his stock, or 32.5% of the outstanding voting common stock of RMSI, and that she voted at a previous directors meeting that Michael be removed from office. The trial court held that Mary was not a valid shareholder of RMSI at the time of the alleged directors’ vote, and, therefore, could not vote Michael out of office. The trial court held that, although the stock was not yet “transferred” to Mary Hyde, it was still “transferable” once the conditions of the Buy-Out Agreement were met. The court limited its ruling to the issue of the quo warranto proceeding, i.e., whether Michael held office legally. The court did not address or determine the issue of stock ownership of the disputed 32.5% of RMSI stock during the quo warranto proceeding. The court found that the language of the Corporation Buy-Out Agreement was unambiguous and clear.
3. Thereafter, Michael held a shareholders and directors meeting of RMSI and gave himself the option to purchase the alleged shares of RMSI which were transferable to Mary Olga Hyde. It was this meeting and Michael’s subsequent action in setting up his own board of directors and electing his own officers to RMSI that precipitated a second writ of quo warranto being filed by William Hyde. The trial court held that the disputed stock was still subject to an option in favor of the corporation which was necessary to resolve prior to determining any issues as to ownership or transferability of the stock. This finding was not appealed.
4. On June 22, 1990, a Board of Directors meeting of RMSI was held. At this meeting, RMSI declined to exercise its option to purchase the 32.5% of the disputed voting shares which were allegedly trans *730 ferred to Mary Olga Hyde. The Board of Directors then moved, seconded and approved a resolution that the corporation decline to assign the same option to the shareholders pursuant to the Buy-Out Agreement.
5. Having performed all necessary corporate action wherein the corporation not only declined to exercise the option, but also declined to assign said option to the remaining shareholders, an action for declaratory judgment was filed by RMSI and consolidated with another action for declaratory judgment filed by Michael Hyde, praying that the court declare the owner of the disputed shares of stock.
After hearing, the trial court found that the corporation’s option had been validly declined and furthermore, the corporation had validly declined to assign the option to its main shareholders in accordance with its rights under the Buy-Out Agreement. The trial court ruled that the corporation’s option could be assigned to the remaining shareholders solely through an action of the Board of Directors. Further, the trial court found that since the Board of Directors had declined to assign that right, the stock was now “transferred” and was owned by Mary Olga Hyde, entitling her to vote as a shareholder of RMSI.
ISSUES
Was the trial court correct in finding that William Hyde validly transferred a portion of his stock to Mary Olga Hyde? In determining the true owner of the disputed stock, we must also determine whether the trial court erred in finding that Michael Hyde was not entitled to an option to become owner of the disputed stock which William transferred to Mary pursuant to the Corporate Buy-Out Agreement of RMSI.
DISCUSSION
It is undisputed that the Corporate BuyOut Agreement of RMSI is controlling as to the transfer of the disputed stock.
Article IV of the Corporate Buy-Out Agreement pertains specifically to a transfer of RMSI stock pursuant to a divorce or separation. Article IV, quoted in extenso, states as follows:
“ARTICLE IV.
DIVORCE OR SEPARATION

4.1 Option of a Divorced or Separated Shareholder

In the event of a legal separation and/or divorce of a registered Shareholder of this Corporation or of any other separation (other than by death) of the community property of a registered Shareholder of this Corporation and such registered Shareholder’s spouse, any shares of this Corporation allocated to such registered Shareholder’s spouse pursuant to such event shall be subject to a first option, in favor of such registered Shareholder, to purchase such shares for such price, terms and conditions as are set forth in the agreement, exercisable within sixty days (60) from the date on which a final judgment is entered in a court of competent jurisdiction recognizing the interest of the spouse in such shares, or from the date of any agreement or separation of property.

4.2 Second Option in Corporation

If such registered Shareholder fails to exercise his option within the stated period, said option shall lapse; and the Corporation shall have second option to purchase such shares for the same price and upon the same terms within sixty (60) days of the lapse of the separated or divorced Shareholder’s option under the procedures set forth in Article II.”
The trial court, in its oral reasons for judgment, found that the sixty-day period available for the separated or divorced shareholder to exercise his option had lapsed as of June 19, 1990. This finding was neither contested nor the judgment appealed.[3]
*731 On June 22, 1990, a Board of Directors meeting of RMSI was held pursuant to notice. Present were a majority of the directors of RMSI, including William Hyde, Michael Hyde and John Steven Gardes. It was moved that RMSI decline to exercise its option to purchase the shares of stock in dispute. This motion was seconded and unanimously approved.
Article 4.2 of the Corporate Buy-Out Agreement states that the corporation’s option should be exercised pursuant to the procedures set forth in Article II. Article 2.4of the Corporate Buy-Out Agreement deals with the corporation’s election not to exercise its option, in pertinent part as follows:
2.4CORPORATE ASSIGNMENT OF OPTION TO OTHER REGISTERED SHAREHOLDERS
“In the event that for any reason the Corporation elects not to purchase any such Stockholder’s shares of Stock ..., the Corporation may assign its option to the other Stockholders ... who shall have the option (but shall not be obligated) to purchase the shares of Stock owned by such Stockholder subject to the option and which the Corporation has not elected to purchase pursuant to this Article II; .... No shareholder shall have such an option unless such assignment shall have been authorized at a special meeting of shareholders called for such purpose by at least a majority of the issued and outstanding stock having voting power under these articles.”
At the Board of Directors meeting of June 22, 1990, after the corporation declined to exercise its option to purchase the shares in dispute, it was then moved, seconded and approved by a 2-1 vote that the corporation decline to assign its option to the other stockholders pursuant to Article 2.4of the Corporate Buy-Out Agreement.
Michael contends that the other shareholders have an independent third option to purchase the stock, exercisable after the corporation declines to purchase the disputed stock. Alternatively, Michael contends that the decision as to whether or not the corporation is going to assign its option should have been determined by the other shareholders instead of by the Board of Directors.
We find no merit in either of these contentions. First, the Buy-Out Agreement is clear in stating that the corporation’s option may be assigned. After the corporation’s discretionary assignment to the other shareholders, a special meeting of the shareholders must be called to authorize the acceptance of the assigned option. No shareholder action is required until and unless the corporation decides to assign its option. There is no independent option exercisable on behalf of the shareholders.
Additionally, the articles of incorporation and the by-laws of RMSI clearly state that the affairs of the corporation shall be managed by the Board of Directors. Therefore, the Board of Directors was the proper authority to act on behalf of the corporation in determining whether to assign the option to the shareholders.
Based upon the foregoing, we find that since all of the conditions of the BuyOut Agreement have been met and no options have been exercised, that the disputed shares of stock were validly transferred to Mary Olga Hyde and that the corporate records properly reflect her as the owner of 32.5% of RMSI outstanding voting stock.
CONSOLIDATED APPEAL OF WILLIAM HYDE
Pursuant to a quo warranto proceeding, consolidated herein for purposes of appeal, the trial court found that the original transfer of William’s stock to Mary was invalid due to the failure to follow the transfer provisions of the Corporate BuyOut Agreement. Due to the invalid transfer, the Board of Directors elected by a vote of the shareholders, which included the vote of Mary’s invalidly transferred stock, was an illegal Board of Directors. Consequently, the officers elected by the new and invalid Board of Directors were also illegally in office. Therefore, the trial court correctly held that the election of Mary as Vice President, at the annual Board of Directors Meeting of RMSI on *732 February 28, 1989, replacing Michael as Vice President, was illegal. Michael refused to vacate the office of Vice President of RMSI, resulting in the quo warranto proceeding being filed by William.
William now appeals the quo warranto findings set forth above. We find no error in the trial court’s finding that, as of February 28, 1989, Michael was still the Vice President of RMSI.
William argues, in the alternative, that even if the stock was in validly transferred to Mary, it would have vested with the transferor, William, giving him a controlling interest in the corporation. He argues that a quorum of the “former” board was at the February 28, 1989 meeting and that this quorum voted for the removal of Michael as Vice President.[4]
We find it unnecessary to discuss William’s alternative argument insofar as the issue is now moot and there remains no justiciable controversy to be decided. William’s application for writ of quo warranto requests that Michael Hyde answer and “state the authority under which he exercises the office of Vice President of Restaurant Management Systems, Inc.” This is the sole relief requested and/or allowable on an application for a writ of quo warranto. We note that during the annual Board of Directors meeting held on February 28, 1990, that it was moved, seconded, and unanimously accepted that Michael Hyde would be Vice President and Chief Operating Officer of RMSI. Additionally, we also note that in the minutes of the RMSI Board of Directors meeting held June 22, 1990, all agreed, including William, that Michael was the present Vice President and Chief Operating Officer of RMSI.
Therefore, we find that the issue of whether or not the trial court, in its judgment of November 27, 1989, was correct in finding that Michael remained the Vice President of RMSI has become moot.
CONCLUSION
Based upon the foregoing, the judgment of the trial court finding that Mary Olga Hyde is the owner of the disputed 32.5% of voting stock in Restaurant Management Systems, Inc. is hereby affirmed. Costs of the appeal in Docket No. 91-366 are to be paid by appellant, Michael Hyde. Costs of the appeal filed in Docket No. 90-580, 590 So.2d 732, are to be paid by appellant, William Hyde.
AFFIRMED.

. La.C.C.P. art. 3901 states as follows:
"Quo warranto is a writ directing an individual to show by what authority he claims or holds public office, or office in a corporation, or directing a corporation to show by what authority it exercises certain powers. Its purpose is to prevent usurpation of office or of powers.”

. The ruling in the quo warranto proceeding (Docket No. 90-580) was also appealed and consolidated, solely for the purpose of appeal, with this appeal from the trial court’s declaratory judgment.

. Oral reasons were rendered pursuant to a hearing on an application for a writ of quo warranto disclosed in the minutes. The record, for reasons unknown to us, does not contain the judgment on this writ of quo warranto.

. William voted Mary's 32.5% by proxy at the February 29, 1989 shareholders meeting. Mary was absent from the Board of Directors meeting that same date and did not participate.