I2PABRO, J.
The child of an interdict appeals from a judgment, in favor of the interdict’s cura-trix, which recognized the interdict as the true owner of certain shares of stock in a family-owned business. For the following reasons, we affirm the judgment of the’ trial court.

Facts and Procedural History

Bertha Vicknair (Ms. Vicknair) is the mother of Deborah V. Hayden (Deborah), Diana V. Johnson Ard (Diana), Joseph Vicknair (Joseph), David Vicknair (David), and Celestain Vicknair, Jr. In October 1987, Ms. Vicknair formed Albany Wrought Iron Manufacturing, Inc. (Albany), which manufactured wrought iron products that were supplied primarily to Wal-Mart Stores, Inc. (Wal-Mart). At the time of incorporation, two stock certificates were issued for 250 shares each — one to Ms. Vicknair and the other to Deborah. Both certificates remained in the possession of the. attorney who prepared the documents necessary for the incorporation of Albany. Initially, Ms. Vicknair and Diana were named as the only members of the board of directors. Diana served on the board until 1989. That same year, Deborah began working as an employee of Albany.
In 1992, Ms. Vicknair consulted with her original attorney concerning the transfer of her stock ownership in Albany to Deborah. In an effort toward the accomplishment of such a transfer, Ms. Vicknair had her attorney prepare a draft of an act of sale. The stated consideration for the stock transfer was to be $600 per month payable to Ms. Vicknair from Albany in the form of dividends for the remainder of Ms. Vicknair’s life. Although the act of sale was never executed by Ms. Vicknair, she endorsed the stock certificate that was in her name to Deborah in the presence of a witness on June 19, 1992. The purported transfer was recorded on the corporate ledger by the secretary for Ms. Vicknair’s attorney. Additionally, a third stock certificate for 250 shares was prepared in Deborah’s name; however, the certificate was not signed by a corporate official, even ^though the name of Ms. Vicknair in her capacity of “President/Secretary” was typed below a signature line.
On October 26, 1998, Joseph and Diana filed a petition for the interdiction of Ms. Vicknair, who was suffering from advanced *49 stages of Alzheimer’s disease. They also sought to have Joseph appointed as provisional curator and Diana appointed as provisional undercuratrix. Attached to this petition was a detailed descriptive list of Ms. Vicknair’s property sworn to by Joseph, but this list did not include' any Albany stock. Pursuant to stipulations entered into by the parties, a judgment of interdiction was signed on November 16, 1998, appointing Diana as curatrix and David as undercurator.[2]
Following the interdiction hearing on November 2, 1998, Deborah alleged that she was the sole owner of the stock in Albany. Based on this assertion, Diana, as curatrix, filed a petition for quo warranto and mandamus, asserting Ms. Vicknair’s right as a shareholder, president, and secretary of Albany to inspect the books and records of the company and seeking to have Deborah show by what authority she maintained her position as president of Albany.
At a hearing on this matter, corporate income tax returns for 1994, 1995, 1996, and 1997 were introduced showing that Ms. Vicknair owned 100 percent of the stock in Albany. The 1998 tax return indicates-that Deborah was the 100 percent owner of Albany stock. A February 29, 2000 audit report reveals the following dividend amounts were paid to Ms. Vick-nair: 1994 — $12,976.78, 1995 — $12,448.87, 1996 — $15,060, 1997 — $23,223,[3] and 1998— $27,195.77. During this period of time, Deborah received compensation as an employee of the company but did not receive any dividends. Corporate records disclosed that Deborah replaced Ms. Vicknair as Albany’s secretary in 1995. It was not until 1 ¿November 1998 that Deborah elected herself to replace Ms. Vicknair as company president.
Following the hearing on this matter, the trial court found that although Ms. Vicknair had the intent to transfer the 250 shares of stock to Deborah, she never completed the transfer since she retained physical possession of the stock certifícate and did not execute the act of sale. The trial court resolved Diana’s petition for quo warranto and mandamus by ordering Deborah, as an officer/director of Albany, to take all actions necessary to recognize Ms. Vicknair as a shareholder owning 50 percent of the shares of stock of said corporation. The judgment to this effect was appealed by Deborah, as an officer and director of Albany,-who essentially contends that the trial court erred' in determining stock ownership in quo warranto and mandamus proceedings and in. concluding that the purported transfer óf the 250 shares of stock from Ms. Vicknair to Deborah was never completed.

Nature of the Actions

A writ of mandamus may be directed to an officer of a corporation to compel the recognition of the rights of its members or shareholders. LSA-C.C.P. art. 3864. By definition, mandamus is an order directing performance. In contrast, a writ of quo warranto does not direct the defendant to perform or to cease from performing some act, but it orders the defendant to show by what authority he or she claims or holds office in a corporation. *50 LSA-C.C.P. art. 3901 and comment (e). The purpose of a writ of quo warranto is to prevent usurpation of office. LSA-C.C.P. art. 8901. Its function is narrow. Morris v, Thomason, 28,238 (La.App. 2nd Cir.4/8/96), 672 So.2d 433, 434, writ denied, 96-1383 (La.9/13/96), 679 So.2d 105. The sole relief allowable to an applicant for a writ of quo warranto against a corporate officer is that the corporate officer state the authority under which he or she claims or holds office. Hyde v. Hyde, 590 So.2d 727, 732 (La.App. 3rd Cir.1991), writ denied, 592 So.2d 412 (La.1992). The respondent in a quo warranto proceeding has the burden of showing by what authority he or she claims or holds office in the corporation. Roser v. Webb, 542 So.2d 122, 124 (La.App. 1st Cir.1989). Since Deborah’s claim to control of the corporation as.president and sole shareholder is contingent on the validity of the transfer to her of the 250 shares of stock initially issued to Ms. Vicknair, Deborah has the burden of establishing the validity of the underlying stock transfer. See Roser v. Webb, 542 So.2d at 124. The resolution of this issue is critical to a determination of whether Deborah had the authority to claim control of the corporation.[4] A finding by the trial court that the stock transfer was invalid would provide support for the issuance of the writ of mandamus ordering Deborah to recognize the ownership interest of Ms. Vicknair. See LSA-C.C.P. art. 3864(2).
In her petition, Diana questions the authority by which Deborah holds the position of president of Albany. Deborah explained that by virtue of the 1987 stock issuance and her purported 1992 stock purchase, she is the sole shareholder of Albany. In November 1998, while acting as the sole shareholder, she purportedly elected herself as president of Albany. Based on this evidence, Deborah submits that she satisfied her burden of showing by what authority she held the position of president. She contends that the trial court erred in allowing evidence surrounding the June 1992 actions by Ms. Vicknair with her attorney.
Viewing the evidence she introduced to prove that she was Albany’s sole shareholder, Deborah contends no other person held rights as a shareholder. Accordingly, Deborah maintains that the court erred in resolving the issue of stock ownership. However, Deborah overlooks the fact that the ownership issue must be resolved in order to determine by what authority she holds the office of president and if Ms. Vicknair was entitled to recognition of any shareholder rights.
Under the specific language of the Louisiana Corporation Code, the person in whose name a stock certificate stands, .or to whom a certificate is endorsed, |fiand who has possession of said certificate, shall be regarded as the legal owner. LSA-R.S. 12:601. A stock certificate is prima facie evidence of corporate ownership, but it is to be distinguished from actual owner•ship which may be determined from all the facts and circumstances of a case. International Stevedores, Inc. v. Hanlon, 499 So.2d 1183, 1188 (La.App. 5th Cir.1986), writ denied, 501 So.2d 230 (La.1987).
Additionally, the corporation code provides that only shareholders of record on the books of the corporation are entitled to receive dividends and to vote at meetings. See LSA-R.S. 12:63, 75, and 77. Under *51 these provisions, Ms. Vicknair, if the legal owner of the 250 shares in question, would be entitled to have the corporation and its officers recognize her rights as a shareholder. Therefore, it was proper for the trial court, in Diana’s quo warranto and mandamus action, to examine the events of 1992 to determine if Ms. Vicknair owned the shares of stock at issue.

Transfer of Stock

In light of the trial court’s finding that Ms. Vicknair had the intent to transfer her 250 shares of stock, to Deborah, Deborah contends that the trial court erred in considering whether an actual physical transfer of the stock had taken place. In other words, Deborah urges that the determination of whether , the purported transfer had been completed between Ms. Vicknair and Deborah should have been made on the basis of intent only. We disagree. Whether it be by virtue of LSA-R.S. 12:601 or former LSA-R.S. 10:8-309, possession of the stock certificate is a factor that must be considered.
Proof of record ownership of stock and possession of the stock certificate by a person raises a presumption that the person is the true owner. See LSA-R.S. 12:601. Moreover, LSA-R.S. 10:8-309,[5] which specifically deals with the 17transfer of a certificated security,[6] provided:
■ An indorsement of a certificated security, whether ’special or in blank, does not constitute a transfer until delivery of the certificated security on which it appears or, if the indorsement is on a separate document, until delivery of both the document and the certificated security.
Therefore, a transfer would not have been completed until delivery occurred. It is undisputed that Ms. Vicknair indorsed the stock certificate in question. However, after indorsing it, she chose to give it to her attorney for' safe keeping on her own behalf. As defined by LSA-R.S. 10:1-201(14), delivery means the voluntary transfer of possession, actual or constructive, of securities from one person to another.[7] Since Ms. Vicknair’s attorney held the certificate on her behalf, neither actual nor constructive possession of the certificate was ever transferred to Deborah.[8] Thus, delivery as contemplated by LSA-R.S. 10:8-309 did not occur.
Deborah submits that the requirements of LSA-R.S. 10:8-309 are only applicable to third persons. As between the parties, Deborah urges that intent is the key. The cases cited in support of this contention do *52 not reflect the state of the law as it existed in 1992. Instead, those cases are based on the Uniform Stock Transfer Law, LSA-R.S. 12:621-643, which was repealed by 1978 La. Acts, No. 165, and replaced by Chapter 8, “Investment Securities,” of Title 10, “Commercial Laws,” which contained LSA-R.S. 10:8-309. LSA-R.S. 10:8-309 seemingly required a voluntary change in possession and parting with control in order to effect a valid transfer of a certificated security as between the parties. J^See LSA-R.S. 10:8-313(l)(a).[9] Based on the applicable law and the evidence of record, we are unable to find error in the trial court finding that any purported transfer, as between Ms. Vick-nair and Deborah, was incomplete for lack of delivery.
Furthermore, the evidence suggests that Ms. Vicknair continued to act as a shareholder until the filing of the interdiction proceeding. She continued to receive dividends, attend shareholder meetings, and exercise her right to vote at shareholder meetings. Additionally, she was listed as the sole shareholder for Albany on corporate tax returns through 1997.[10] Accordingly, we are unable to conclude that the trial court manifestly erred in determining that Ms. Vicknair had remained as the owner of the 250 shares of Albany stock in question. Therefore, recognition of Ms. Vicknair’s rights as a shareholder was appropriately ordered by the trial court.

Decree

For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to Deborah V. Hayden.
AFFIRMED.

. Subsequently, Deborah filed a motion for new trial on the basis that the judgment was contrary to the law and evidence, in that information was discovered that was not available at trial. After reviewing this new information, the trial court denied the motion for new trial.

. Ms. Vicknair’s "1099-Div'' form regarding dividends from Albany for 1997 disclosed ordinary dividends of $38,000.

. Moreover, a writ of quo warranto is an appropriate action for stockholders of a corporation to take where two stockholders are personally claiming an office. See International Stevedores, Inc. v. Hanlon, 499 So.2d 1183 (La.App. 5th Cir.1986), writ denied, 501 So.2d 230 (La.1987).

. LSA-R.S. 10:8-309 was in effect in 1992, but was vacated by the amendment and reenactment of Chapter .8, "Investment Securities,” by 1995 La. Acts, No. 884, § 1, effective January 1, 1996. All further statutory references in this opinion are to the applicable laws in effect in 1992.

. A certificated security means generally a security that is represented by a certificate. Technically, LSA-R.S. 10:8 — 102(l)(a) defined a certificated security as a share, participation, or other interest in property of, or an enterprise of, the issuer or an obligation of the issuer, which is represented by an instrument issued in bearer or registered form, of a type commonly dealt in on securities exchanges or markets or commonly recognized in any area in which it is issued or dealt in as a medium for investment, and either one of a class or series or by its terms divisible into a class or series of shares, participations, interests, or obligations. ■

. LSA-R.S. 10:1-201(14)'s definition of delivery was made applicable to Chapter 8 on "Investment Securities” by LSA-R.S. 10:8-102(6).

. The record is devoid of any evidence that Ms. Vicknair ever instructed her attorney to deliver it to Deborah or that Ms. Vicknair's attorney ever possessed this stock on Deborah'sbehalf.

. LSA-R.S. 10:8-313(l)(a), which governed the transfer of a security in 1992, provided that a transfer occurred at the time the purchaser or his designee ácquired possession of a certificated security.

. This court also notes that in response to a petition for authority to sell Wal-Mart stock filed by Diana, as curatrix, later in these interdiction proceedings, Deborah alleged that she was a fifty percent owner of Albany, as opposed to the sole owner. See Interdiction of Vicknair, 01-1013 (La.App. 1st Cir.6/21/02) (unpublished opinion).