|,SOL GOTHARD, Judge.
These consolidated cases derive from actions filed as a result of a dispute among shareholders of Capital Improvement, Inc. (Capital). The first action is a “Petition for Writ of Quo Warrranto” filed on February 3, 2003 by William C. Hale. In the petition, Mr. Hale alleges that defendants, Dean Liljeberg and Joseph D. Sanford are not directors of Capital. In the petition, Hale asserts that he and his wife, Diane, were the original incorporators of Capital in 1995. According to the petition, at the time of incorporation each of the Hales owned 50% (50 shares) of the corporation’s common voting stock. On July 1, 1998, Diane executed an Act of Transfer, selling twenty-five shares to Dean Liljeberg and twenty-five shares to Joseph D. Sanford. At that same time, William Hale, Liljeberg and Sanford executed a shareholder agreement which provided that Hale would serve as president, Sanford would serve as vice-president, and that Liljeberg would serve as secretary/treasurer. Hale contends that the corporation never elected a board of directors. Nevertheless, both defendants, acting as directors, issued a notice of a meeting of the corporation’s board of directors. Hale claimed Liljeberg and Sanford planned to remove Hale at the meeting. Hale filed the Petition for Quo Warranto to prevent Liljeberg and Sanford from holding the meeting.
| ^Defendants, Liljeberg and Sanford, filed exceptions of lack of service and no cause of action. They also answered the petition asserting that, at a meeting among the three shareholders held on January 28, 1999, the shareholders unanimously agreed that each of the shareholders was a director, thereby establishing a board of directors in accordance with the bylaws of the corporation. Thereafter, each of the men has acted as director in various transactions including the purchase and sale of property, as well as the closing of a bank loan.
After a hearing on the matter, the trial court rendered a judgment on the Writ of Quo Warranto, declaring that Liljeberg and Sanford are not directors of Capital on March 12, 2004. Defendant filed a motion *30 for new trial, which was denied. Defendants appealed that decision.
On March 19, 2004 the annual shareholders meeting of Capital was held, with all three shareholders in attendance. At that meeting, various motions were introduced, including one to vote for the termination of Hale’s employment if he persisted to share “shareholder and officer information with the employees of the company.” The motion passed by a vote of 2 to 1, with Liljeberg and Sanford voting for, and Hale voting against. Lilje-berg and Sanford, by the same procedure voted to decrease Hale’s annual salary by $25,000, and to give immediate $10,000 bonuses to both Liljeberg and Sanford. The two defendants also moved for and passed resolutions to have company vehicles re-titled in their personal names, and to revoke various privileges formerly held by Hale as president of the company, including hiring of personnel. On each motion votes were taken by heads and by shares, with Hale contending the vote should be by shares and Liljeberg and Sanford contending the vote should be by heads.
As a result of the meeting, Hale filed a “Stockholder’s Derivative Action for Declaratory Judgment and Injunctive Relief,” seeking to enjoin Liljeberg and Sanford from taking any action to carry out the matters voted on at the March 19, |42004 meeting, and asserting that the Shareholder Agreement of the company required a vote by shares. The trial court issued a temporary restraining order and set the matter for a hearing on the preliminary injunction. After a hearing on May 5, 2004, the trial court rendered judgment declaring the vote of Capital is by the number of shares held, not by the number of heads. The trial court issued a preliminary injunction enjoining the defendants, Liljeberg and Sanford “from taking any action generally to carry out any of the matters voted upon at the March 19, 2004 shareholder’s meeting.” Defendants, Lil-jeberg and Sanford, appealed that judgment and the two matters have been consolidated for our review.

Writ of Quo Warranto

At the trial in the action for a Writ of Quo Warranto, Mr. Hale, president of Capital, testified that he founded the company and built it up over the years. He is the sales and marketing manager, and also does some financial management. Mr. Hale owns 50% of the stock in the company that he and his wife incorporated in January of 1995. At that time, the initial report of the company designates him and his wife as the first directors of the corporation. In July of 1998, his wife agreed to sell her 50% of the company to Hale’s associates, Liljeberg and Sanford. By the act of transfer executed by Mrs. Hale, Liljeberg purchased 50% of her half of the company and Sanford got the other half. So after the transfer of stock, Hale owned 50%, Liljeberg owned 25% and Sanford owned 25%. Hale stated that the three men worked together and had business meetings, but not stockholder meetings. He further testified that he never treated defendants as if they were directors, and did not recall having a directors meeting on January 22, 1999, or signing a resolution stating that the Board of Directors had a meeting on that day. Hale was cross-examined on various meetings held among the parties for the purpose of conducting company business, including the purchase and sale of property and the closing of a bank loan. Hale recalled the meetings, but maintained that the ^meetings were simply to enact the transactions to which all three parties agreed, and were never intended as meetings of the Board of Directors.
*31 Documents entered into evidence in conjunction with this testimony included an unsigned “Corporate Resolution to Borrow” that indicates a meeting of the Directors was held on February 2, 1999 to authorize the company to borrow money from Omni Bank. There is a document signed by Liljeberg and Hale which states that a meeting of the Board of Directors was held on February 2, 1999 at which time a resolution was passed to authorize Hale to act on behalf of the company to buy and sell property and borrow money. A loan commitment by Omni Bank was executed on January 22, 1992, and signed by Liljeberg, as secretary and Hale as president of the company. The record also contains a corporate resolution to sell certain immovable property. It indicates that a meeting of the Board of Directors was held on June 12, 2002, at which a resolution was adopted to authorize Sanford to sell the property in question. It is signed only by Liljeberg.
Helen Cumbo, employed by the Secretary of State for the State of Louisiana testified that the annual reports submitted by Capital for 1999 and 2000 list William Hale as a director, Dean Liljeberg as an officer and Joseph Sanford as an officer. The report for the year 2001 lists all three men as directors of the company. Ms. Cumbo explained that by administrative procedure in the Secretary of State’s office lists an agent of the corporation as an unspecified “officer” it will be recorded on the books as “director.” Ms. Cumbo stated that there is no underlying paperwork that would establish that change. Ms. Cumbo explained that, when submitted by Capital and signed by Liljeberg, the reports contained no designation next to the name. The designation of Director was put on in the Secretary of State’s office.
| (¡Liljeberg testified that he recalled a meeting in January of 1999 to elect directors of the company to satisfy Omni Bank’s requirement for a loan. He maintained that all three shareholders were in attendance and the vote was unanimous to make Liljeberg and Sanford directors of the company and to proceed with the loan. Liljeberg testified that he was “90% sure” he sent documentation of that meeting to the loan officer at Omni Bank, but was unable to produce a copy of the document.
On cross-examination, Liljeberg acknowledged that as secretary of the company, he was responsible for keeping the minutes and paperwork. However, he could find no paperwork to support his testimony regarding the election of directors in January of 1999. Further, he admitted that in the next annual report he listed himself and Sanford as “officers,” not directors.
Sanford also testified at trial. His testimony corroborates that of Liljeberg regarding the meeting in January of 1999 at which time the three men agreed to make Liljeberg and Sanford directors of the company along with Hale. Sanford also testified that a second meeting of the Board was held in 2002 when the men decided to sell the property they purchased in 1999.
After the judgment in favor of Hale was rendered, Liljeberg and Sanford filed a motion for new trial to which was attached a handwritten, undated, unsigned paper stating that “all three officers will be responsible for all positions,” and a letter from Hale’s attorney to the attorney representing Liljeberg and Sanford’s making an offer to buy their stock. In the letter, one of the terms of the offer is that Lilje-berg and Sanford resign as officers and employees and directors of the company.
The trial court heard the motion for new trial and denied it. As requested by the defendants, the trial court gave written *32 reasons for its decision. In part the trial court stated:
|7..... Dean Liljeberg and Joseph Sanford testified that they were directors by virtue of a vote that allegedly took place in late January 1999. The only evidence that such a vote took place was the self serving testimony of the defendants. The defendants offered no evidence in way of corporate minutes or memoranda to show that such a vote ever took place. The Court found it compelling that the Defendant, Dean Liljeberg, who is the Secretary for the corporation submitted two annual reports to the Secretary of State’s office in which he designated Joseph Sanford and himself as officers of the company and not directors. He made that designation despite the fact that William Hale was listed as a director on the preprinted annual report forms in the same section. Liljeberg’s actions speaks volumes in this Court’s mind as to his understanding of whether or not he and Joseph Sanford were directors of the corporation at the time of the 1999/2000 annual report filings, which were some eleven months after the alleged vote.
The trial court continued to explain why it denied the defendants’ motion for new trial:
... The defendants presented as newly discovered evidence a letter from the plaintiffs attorney, John Stassi, requesting that Dean Liljeberg step down from the Board of Directors of Capital Home Improvement, Inc. The second piece of evidence offered is a copy of an undated, handwritten corporate minutes. The Court carefully reviewed the handwritten document. This document does not state that Dean Liljeberg and Joseph Sanford are elected to the Board of Directors. The document only states that all officers shall be responsible for all positions. The Court found that this newly discovered evidence was not sufficient to warrant a new trial in this matter .
In brief to this Court, defendants argue that the trial court was manifestly erroneous in its finding that they were not directors.
La. C.C.P. art 3901 provides as follows.
Quo warranto is a writ directing an individual to show by what authority he claims or holds public office, or office in a corporation, or directing a corporation to show by what authority it exercises certain powers. Its purpose is to prevent usurpation of office or of powers.
The respondent in a quo warranto proceeding has the burden to show by what authority he claims or holds office in a corporation. Clay v. Clay, 389 So.2d 31 (La.1979); International Stevedores, Inc. v. Hanlon, 499 So.2d 1183 (La.App. 5 Cir.,1986), writ denied, 501 So.2d 230 (La. 1987).
Lit is well settled that appellate review of a finding of fact is based on the manifest error/clearly erroneous rule set forth in Rosell v. ESCO, 549 So.2d 840 (La.1989). As recently explained by this Court in Donahoe v. Jefferson Council On Aging, Inc., 04-178, (La.App 5 Cir. 10/26/04), 887 So.2d 549:
This standard precludes setting aside a trial court’s or a jury’s finding of fact in absence of manifest error or unless it is clearly wrong. In applying the manifest error-clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one. The reviewing court is compelled to review the record in its entirety to determine whether the trial court’s finding was clearly wrong or *33 manifestly erroneous. The Supreme Court has emphasized that it is crucial that the reviewing court keep in mind that “if the trial court or jury’s findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.”
(footnotes and citations omitted)
Given the facts of this case and the written reasons for judgment, we cannot find manifest error in the trial court’s finding that defendants were not elected directors of the corporation.

Shareholder’s Derivative/Declaratory Judgment

The single issue presented for our review in this matter is whether the vote of Capital Home Improvements, Inc. is by the number of shares or by the number of heads.
As previously stated in the recitation of facts, defendants noticed a shareholder’s meeting soon after the judgment on the Quo Warranto, which all three men attended. At that meeting, defendant’s voted to re-title company vehicles into their own names, decreased the annual compensation of Hale by $25,000 and voted to give themselves a $10,000 bonus each.
| {¡Defendants maintain the vote on these issues must be done by heads, giving each of the three parties one vote. Hale maintains the vote is done by shares, giving him 50%, and each of the defendants 25%.
At the hearing on the matter, the trial court received certain documentary evidence introduced into the record including, the Article of Incorporation of Capital Home Improvement, Inc., the Initial Report, the Act of Transfer of the stock from Mrs. Hale to defendants, the 1998 Shareholder Agreement, and the consent of the shareholders to amend the Article of Incorporation to reflect the transfer of the stock. After hearing arguments from both parties, the trial court took the matter under advisement and in due course rendered judgment declaring that the vote is by shares. It is from that judgment that defendants appeal.
Interpretation of the contract is the determination of the common intent of the parties to it. La. C.C. art. 2045. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation is allowed. La. C.C. art. 2045. The words of a contract must be given their generally prevailing meaning. La. C.C. art. 2047. La. R.S. 12:75 A provides in pertinent part as follows;
A. Except as provided in R.S. 12:186 and R.S. 12:140.12, and except as otherwise provided in the articles, each shareholder of record shall have the right, at every shareholders’ meeting, to one vote for each share standing in his name on the books of the corporation.
We believe that, given the language in the corporate documents and the prevailing meaning in the normal course of corporate law, the trial court was correct in its ruling that the vote is by shares.
For the foregoing reasons, we affirm the trial court and assess all costs of this appeal to defendants.

AFFIRMED.