CRAIN, J.
|2In this quo warranto proceeding, the trial court found that a member of AAmag-in Property Group, L.L.C. properly exer *497 cised its right to remove and replace the president of AAmagin. We affirm.
FACTS AND PROCEDURAL HISTORY
AAmagin is in the real estate development business and was formed in 2003 with two members, WJ Belton Company, L.L.C., which has a 51% ownership and voting interest, and Sunquest Properties, Inc., which holds the remaining 49% ownership and voting interest. The member entities’ respective presidents, Will J. Bel-ton and William Brockman, previously developed properties together and decided to form AAmagin to pursue further development projects. The Articles of Organization designated Belton as the manager of the company. Although Sunquest is the minority member by ownership interest, it holds a 67% economic interest in AAmagin pursuant to the company’s Operating Agreement, meaning that Sunquest is entitled to 67% of the company’s profits and bears the same percentage of any losses.
According to William Brockman’s testimony, during the course of AAmagin’s operations, it became apparent that Brockman would be required to execute guarantees on significant loans in order to procure additional financing for the company; but Brockman refused to assume that risk without more protection of Sunquest’s financial interest and control over AAmagin. While the Operating Agreement already granted Sunquest the right to remove Belton as manager pursuant to a provision authorizing that action by a member owning only a 33% interest in the company, Brockman was concerned that if Sunquest exercised that right, then Belton Company, as the majority owner, would simply re-hire Belton as manager. That concern, and Brock-man’s refusal to execute the necessary Isguarantees to facilitate additional financing for the company, led to the preparation and execution of an amendment to the Articles of Organization.
The amendment, captioned “First Amendment to Articles of Organization of AAmagin Property Group, LLC” (Amendment) was executed on November 1, 2006, and provides, in pertinent part, that the manager of AAmagin would be given the title of “President” and that Belton would occupy that position. The Amendment also contains the following provision:
3.1.4 Removal of the President. The Members, by vote of Members holding at least thirty three percent (33%) of the Percentages then held by Members, at any time and from time to time and for any reason, may remove the President then acting. Should the Manager ever be removed pursuant to this Section 3.1.4, then Sunquest Properties, Inc., shall have the sole right to appoint a new President and this new President shall be removed only by unanimous consent of the Members. Should a new President be appointed pursuant to this Section 3.1.4, a Second Amendment to Articles of Incorporation shall be executed and filed with the Louisiana Secretary of State reflecting said change.
The Amendment was signed on behalf of both members, with William Brockman signing on behalf of Sunquest and Belton’s signature appearing on behalf of Belton Company.[1]
Brockman testified that his concerns over control of the company were addressed by the sentence providing that if *498 the manager (president) was removed, Sunquest Properties had the sole right to appoint a new president who could be removed only by unanimous consent of the members. Belton hand-delivered the Amendment to the Louisiana Secretary of State’s Office for filing.
Approximately five years later, the shareholders of Sunquest, consisting of William Brockman and his brother, Ralph W. Brockman, Jr. (Brockman, Jr.), decided to exercise the right to remove Belton as president and replace him with Brockman, Jr. A resolution of AAmagin setting forth that action was adopted and [4executed on behalf of Sunquest by William Brockman on October 31, 2011. Belton, however, refused to vacate his position, and the resulting uncertainty over the control of AAmagin prompted one of its business partners, Metro City Redevelopment Coalition, Inc., to file this quo warranto proceeding against Belton and Brockman, Jr., to determine which of the defendants is president of AAmagin.
The trial court set a date for oral argument and ordered the parties to file all depositions, affidavits and other evidence that they wished the court to consider. In support of his authority, Brockman, Jr., argued that the Amendment vested Sun-quest with the right to remove and replace Belton with a person of its choosing, and Sunquest chose Brockman, Jr., as the new president. Belton countered that the Amendment was defective because the acknowledgments attached to the Amendment were not signed by either William Brockman or Belton. He further asserted that his removal was improper because the action was not approved at a meeting of the members of AAmagin. The parties submitted numerous documents and depositions to the trial court, including but not limited to the organizational documents for AAmagin, including the Amendment and the Operating Agreement, the corporate documents for Sunquest, and the depositions of Belton, William Brockman, and Brockman, Jr.
The trial court issued written reasons for judgment finding in favor of Brockman, Jr., and concluding that the Amendment was controlling and that Section 3.1.4 thereof allowed Sunquest to remove and replace Belton without a meeting of the AAmagin members. A judgment was signed that declared Brockman, Jr., to be the president of AAmagin, and Belton appealed.
LAW AND ANALYSIS
Quo warranto is a writ directing an individual to show by what authority he claims or holds public office, or office in a corporation, or directing a corporation to show by what authority it exercises certain powers. Its purpose is to prevent | ¡¡usurpation of office or of powers. La. Code Civ. Pro. art. 3901; In re Interdiction of Vicknair, 01-0902 (La.App. 1 Cir. 6/21/02), 822 So.2d 46, 49-50. When the court finds that a person is holding or claiming office without authority, the judgment shall forbid him to do so. It may declare who is entitled to the office and may direct an election when necessary. La.Code Civ. Pro. art. 3902. The writ of quo warranto, although required to be instituted by petition, is an extraordinary remedy which may be tried summarily. See La.Code Civ. Pro. art. 3781; Clay v. Clay, 389 So.2d 31, 35 (La.1979). The respondent in a quo warranto proceeding has the burden of showing by what authority he or she claims or holds office in the corporation. In re Interdiction of Vick-nair, 822 So.2d at 50. The trial court’s factual findings in a quo warranto proceeding are reviewed on appeal under the manifest error/clearly erroneous standard of review. See In re Interdiction of Vick *499 nair, 822 So.2d at 52; Hale v. Liljeberg, 04-861 (La.App. 5 Cir. 1/25/05), 895 So.2d 28, 32.[2]
Belton assigns five errors to the trial court’s judgment that essentially assert two contentions: (1) the trial court erred in admitting into evidence and assigning any validity to the Amendment because it was not properly acknowledged, and (2) the trial court erred in finding that Sun-quest could remove Belton from his position as president and replace him with Brockman, Jr., without a vote at a meeting of the members of AAmagin.
A. Validity of Amendment
Louisiana Revised Statute 12:1309 permits an amendment to the articles of organization of a limited liability company, but the statute requires that the [ ¿‘articles of amendment be acknowledged by at least one of the persons who signed them or ... be executed by authentic act.” The Amendment contained an acknowledgment for the signature of William Brockman that provides:
STATE OF LOUISIANA
PARISH OF OUACHITA
BE IT KNOWN, that on this 1st day of November, 2006, before me, the undersigned Notary Public, duly commissioned, qualified and sworn in and for the aforesaid Parish and State, personally appeared William G. Brockman, appearing herein as the President of Sun-quest Properties, Inc., who executed the above and foregoing instrument and declared and acknowledged to me, Notary, in the presence of the undersigned competent witnesses, that he executed the above and foregoing instrument of his own free will, as his own act and deed, for the uses, purposes, and benefits therein expressed.
The acknowledgment is signed by two witnesses and a notary public, but it is not signed by Brockman, nor is there a signature line for Brockman on the acknowledgment page. A similar acknowledgment is attached for Belton’s signature, and that document provides that Belton appeared on behalf of Belton Company and “declared and acknowledged to me, Notary, in the presence of the undersigned competent witnesses, that he executed the above and foregoing instrument of his own free will, as his own act and deed, for the uses, purposes, and benefits therein expressed.” That acknowledgment is also signed by two witnesses and a notary public but is not signed by Belton.
Belton contends that the acknowledgments are insufficient because neither is signed by the party who is acknowledging his signature. The form of a acknowledgment is governed, in part, by Louisiana Revised Statute 35:511, which provides that either “the forms of acknowledgment now in use in this state, or the following, may be used in the case of conveyances or other written instruments, whenever such acknowledgment is required or authorized by law for any purpose!.]” After this introductory language, Section 35:511 sets forth standard provisions that can be used in an acknowledgment that essentially provide that a |7party “appeared” before a notary public and “acknowledged” that he executed an instrument. The statute then *500 addresses the necessary signatures in a parenthetical that provides, “In all cases, acknowledgments taken in this state shall be signed in conformity with the provisions of R.S. 35:12 and either Article 1886 of the Louisiana Civil Code or R.S. 18:3720.”[3] Thus, to determine the necessary signatures on an acknowledgment, Section 35:511 directs the court’s attention to Louisiana Revised Statute 35:12, Louisiana Civil Code article 1836, and Louisiana Revised Statute 13:3720.
Section 35:12 governs the information that a notary public must include in an act and mandates that the notary public insert his name and the names of the witnesses “under their respective signatures.” La. R.S. 35:12A(1). Accordingly, the act reflecting an acknowledgment under Article 1836 must contain the signatures of the notary public and witnesses. Belton does not dispute that the acknowledgments were signed by a notary public and two witnesses. Rather, he challenges the authority of the notary public who executed the acknowledgment for William Brock-man’s signature because the notary’s seal contains “Union Parish,” while the acknowledgment occurred in Ouachita Parish. This argument has no merit. Acknowledgments may be taken before any notary public duly appointed and qualified in Louisiana. La. R.S. 35:3. Furthermore, any person validly appointed a notary public for Union Parish is authorized to exercise all of the functions of a notary public in Ouachita Parish. La. R.S. 35:191G. The subject acknowledgement complies with Louisiana Revised Statute 35:12. | ^Section 35:511 next references Article 1836, which provides, in pertinent part:
An act under private signature may be acknowledged by a party to that act by recognizing the signature as his own before a court, or before a notary public, or other officer authorized to perform that function, in the presence of two witnesses. An act under private signature may be acknowledged also in any other manner authorized by law. (Emphasis added)
Article 1836 permits a party to acknowledge an instrument by “recognizing” his signature before a court, notary public, or other authorized office. The article does not specifically require that the party sign the instrument that documents the acknowledgment. The language of Article 1836 can be contrasted with the provisions of Louisiana Revised Statute 13:3720, which is also referenced in Section 35:511 and permits an acknowledgment by an “affidavit” of the vendor, grantor or witness to an instrument. To be valid, an affidavit must be signed by the affiant and a notary public. See Gorman v. Miller, 12-0412 (La.App. 1 Cir. 11/13/13), 136 So.3d 834, 841 (en banc).
Thus, while Section 13:3720 requires that the acknowledgment by the party or witness be evidenced by a signed document (an affidavit), Article 1836 does not expressly require that the party’s acknowledgment be set forth in an act signed by him, only that he appear before a court, notary public, or other authorized officer and “recogniz[e]” his signature on the original instrument. Although the party’s sig *501 nature on an act of acknowledgment certainly provides additional evidence of the acknowledgment, the issue before the court is whether such a signature is required for a valid acknowledgment under the particular facts of this case. For the above reasons, we find that it is not.
For the Amendment to satisfy the form requirement of Louisiana Revised Statute 12:1309, it must be acknowledged by at least one person who signed it. The record establishes that the following facts have not been disputed: (1) William | sBrockman appeared before a notary public and two witnesses and “declared and acknowledged” that he signed the Amendment, (2) the notary public and both witnesses signed an instrument evidencing Brockman’s acknowledgment, and (3) Brockman confirmed his signature on the Amendment under oath in his deposition. No party to this proceeding has ever questioned the authenticity of Brockman’s signature on the Amendment. Under these circumstances, we conclude that Brockman sufficiently acknowledged his signature in accordance with Article 1836 and Section 35:511. The Amendment satisfies the form requirement of Section 12:1309 because it was acknowledged by at least one person who signed it. The Amendment is therefore valid and enforceable.
Belton challenges the trial court’s decision to admit the Amendment into evidence and relies on Leibe v. Hebersmith, 39 La.Ann. 1050, 3 So. 283 (1887), as support for his challenge. In Leibe the court held that a mortgage agreement was not admissible because the acknowledgment was made in the presence of only one witness, and the proponent offered no other proof of the signatures on the agreement. Leibe, 39 La.Ann. at 1051-1052, 3 So. at 283-284. The present case is distinguishable because the acknowledgement was made in the presence of two witnesses and a notary public, as required, and Brockman confirmed his signature on the Amendment under oath in his deposition which was admitted into evidence. Furthermore, Belton’s signature was sufficiently established by his admission that his wife was authorized to sign his name on the Amendment. Leibe does not support Belton’s challenge to the Amendment. The trial court did not err in admitting the Amendment into evidence. See Louisiana State Mineral Board v. Abadie, 164 So.2d 159, 174 (La.App. 1 Cir.1964) (an act under private signature |10is inadmissible until the signatures are proved, but the signatures can be proved in open court, in the same manner as any other material and relevant circumstance).[4]
Accordingly, the trial court did not err in admitting the Amendment into evidence and finding that the Amendment controlled the removal and replacement of Belton from his position as president of AAmagin.
B. Necessity of a Meeting
Belton’s remaining assignments of error primarily concern whether the trial court erred in determining that Belton could be removed as manager/president and replaced by Brockman, Jr., without a *502 meeting of the members of AAmagin. Generally, a manager of a limited liability company may be removed by a vote of a majority of the members at a meeting called expressly for that purpose, unless the articles of organization or operating agreement provide otherwise. See La. R.S. 12:1313. Brockman contends, and the trial court agreed, that the articles of organization, by virtue of the Amendment, “provide otherwise” and dispensed with the necessity of a meeting. We find no error in this interpretation of the Amendment.
Section 3.1.4 of the Amendment provides, in pertinent part, that the “Members, by vote of Members holding at least thirty three percent (33%) of the Percentages then held by Members, at any time and from time to time and for any reason, may remove the President then acting.” The Amendment further provides that if the president is removed pursuant to this provision, then “Sunquest Properties, Inc., shall have the sole right to appoint a new President and this new President shall be removed only by unanimous consent of the Members.” Only InSunquest is granted the authority to both remove Belton and appoint his replacement. Thereafter, as provided in the Amendment, the individual appointed by Sunquest can only be removed with Sunquest’s consent because any such removal requires unanimous consent of the Members. Therefore, based upon the language of the Amendment, the members agreed that Sunquest had the unilateral right to remove and permanently replace Belton “at any time and from time to time and for any reason.”
Belton’s argument that a meeting is required to exercise this right ignores both the letter and intent of the Amendment. The parties agreed that the right could be exercised “at any time” by Sunquest. If, as Belton proposes, Sunquest could only exercise the right at a meeting, the Amendment and the right granted therein would be essentially useless. Under the terms of the Operating Agreement, a meeting could only be called by the manager/president, which was Belton, or by the Members holding at least a majority of the ownership interest in the company, which was Belton Company. Consequently, if a meeting was required, Sunquest could exercise its right to permanently remove and replace Belton only if Belton agreed to call a meeting for that purpose. Belton would effectively retain total control over the management of the company. That interpretation is contrary to the terms of the Amendment and the intent of the parties as reflected in the testimony of William Brockman. The trial court did not err in concluding that a meeting was not necessary for Sunquest to exercise its right to remove and replace Belton pursuant to Section 3.1.4 of the Amendment.
Belton’s final argument is that he was not properly removed and replaced because the resolution executed on behalf of Sunquest for that purpose is a nullity in that it was not adopted at a duly called meeting of Sunquest. The evidence established that William Brockman and Brock-man, Jr., are the only shareholders of Sun-quest and also serve as directors for the company, with the only other director | igbeing an employee of Brockman, Jr. Both William Brockman and Brockman, Jr., testified that the subject resolution was adopted after they met and agreed to remove Belton. The by-laws for Sunquest allow a director to call a special meeting, and a majority of the directors at any such meeting constitutes a quorum that may transact business. We find no manifest error in the trial court’s conclusion that the Sunquest resolution granting authority in connection with the removal of Belton as *503 president of AAmagin was properly-adopted. This argument is without merit.
CONCLUSION
The trial court did not err in finding that the Amendment was properly acknowledged by William Brockman in accordance with Louisiana Civil Code article 1836 and Louisiana Revised Statute 35:511, and that Sunquest properly removed and replaced Belton as president of AAmagin. We affirm the June 10, 2013 judgment and assess all costs of the appeal to Will J. Belton.
AFFIRMED.

. Belton testified that his wife actually signed the instrument for him, but he admitted in his deposition and acknowledged in his appellate brief that she was authorized to sign it on his behalf. Belton also confirmed that he reviewed the Amendment before it was executed, and he did not communicate any objections to Brockman.

. We note that Louisiana Code of Civil Procedure article 3901 expressly authorizes the quo warranto proceeding to determine one’s authority to hold a "public office, or office in a corporation” and does not expressly permit the proceeding to determine the authority of one holding office in a limited liability company. However, because neither party objected to this action as an unauthorized use of summary proceeding, we pretermit any review of whether the quo warranto proceeding may be utilized to determine the authority of a person holding office in a limited liability company. See La.Code Civ. Pro. arts. 926A(3) and 928A.

. This provision was incorporated into the statute by 2004 La. Acts No. 455. Prior to that amendment, Section 35:511 provided that the acknowledgment should contain the "signature and title of the officer taking the acknowledgment,” which had been construed by at least two courts as requiring only the signature of the notary public and not the acknowledging party. See Succession of Voorhies v. Voorhies, 03-163 (La.App. 3 Cir. 7/16/03), 853 So.2d 655, 660; First National Bank of Lafayette v. The King Fish, 173 F.Supp. 367, 368 (E.D.1959).

. The remaining cases cited by Belton hold that an unsigned affidavit is not admissible in support of, or in opposition to, a motion for summary judgment. See Robertson v. Doug Ashy Building Materials, Inc., 10-1552 (La. App. 1 Cir. 10/4/11), 77 So.3d 339, 351 n. 16, writs not considered, 11-2432, 11-2433 (La. 1/13/12), 77 So.3d 973, 974, and writs denied 11-2468, 11-2430 (La. 1/13/12), 77 So.3d 972, 973; Charles v. Faust, 487 So.2d 612, 613 (La.App. 4 Cir.1986). An affidavit must be signed to be valid. Gorman, 136 So.3d 834, 842 (en banc). The present case does not involve an attempt to introduce an unsigned affidavit into evidence.