898 So.2d 529 (2005)
Albert B. CRUTCHER, Mary Lee Tullis Crutcher, Frederick J. Tufts, James Reiss, and Allison McAshan, Trustee of the 241 Trust
v.
J. David TUFTS, III, Claudia Liberto Tufts, Robert G. Tufts, Ruth G. Tufts, Charles Phillips, J. David Tufts, III, in his capacity as Trustee of the JDT/RGT Family Trust, and Hal Simeon, et al.
No. 2004-CA-0653.
Court of Appeal of Louisiana, Fourth Circuit.
February 16, 2005.
Thomas M. Flanagan, Jennifer L. Thornton, Stanley, Flanagan & Reuter, L.L.C., New Orleans, and Leopold Z. Sher, James M. Garner, Timothy B. Francis, Sharonda R. Williams, Sher, Garner, Cahill, Richter, Klein, McAlister & Hilbert, L.L.C., New Orleans, LA, for Plaintiffs/Appellees.
Walter C. Thompson, Jr., Jan K. Frankowski, Barkley & Thompson, L.C., New Orleans, LA, for Defendants/Appellants.
(Court composed of Judge PATRICIA RIVET MURRAY, Judge James F. McKAY, III, Judge, DENNIS R. BAGNERIS, SR.).
*530 PATRICIA RIVET MURRAY, Judge.
This is a quo warranto action. It involves a dispute between the minority and majority shareholders of Crutcher-Tufts Resources, Inc. ("CTR"), a Delaware corporation. The dispute is whether the majority shareholders, using a written consent resolution, could lawfully remove and replace two of CTR's six directors. Finding they could not, the trial court rendered judgment in favor of the plaintiffs, who represent the minority shareholder. From that judgment, the defendants, who represent the majority shareholders, appeal. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND
The relevant facts in this case are undisputed.[1] Since January 1998, CTR's three shareholders have been as follows:
 The 241 Trust, which owns 400 shares or 40%; Allison McAshan is its trustee.
 The JDT/RGT Family Trust (the "Family Trust"), which owns 400 shares or 40%; J. David Tufts, III ("David Tufts") is its trustee.
 The J. David Tufts, III, and Claudia Liberto Tufts Children Trust (the "Children Trust"), which owns 200 shares or 20%; Hal Simeon is its trustee.[2]
The 241 Trust is the minority shareholder, and it is represented by the plaintiffs. The Family Trust and the Children Trust collectively are the majority shareholders, and they are represented by the defendants.
In this case, Delaware law is controlling because CTR is a Delaware corporation. The dispute is over the validity of a written consent resolution, which was executed by the majority shareholders pursuant to 8 Del. C. § 228 and CTR's bylaws. On March 15, 2002, David Tufts, as the Family Trust's trustee, and Hal Simeon, as Children Trust's trustee, executed that resolution. Because the validity of that written consent resolution is the crux of the dispute before us, we quote its recitals:
WHEREAS, Section 9 of Article II of the Bylaws provides that directors shall be elected by plurality vote; and
WHEREAS, Article 11 of the Corporation's Certificate of Incorporation provides that shareholders shall have the privilege of cumulative voting in the election of directors; and
WHEREAS, the shareholders last elected directors at the 1999 annual meeting held on May 11, 1999, at which time J. David Tufts, III, Robert G. Tufts, Frederick J. Tufts, Albert B. Crutcher, Jr., Mary Lee Crutcher and James Reiss were elected to the board of directors for a term of one year or until their successors were elected and qualified; and
WHEREAS, the Corporation failed to hold the 2000 and 2001 annual meetings of shareholders as required by the Bylaws of the Corporation and Delaware corporation law; and

*531 WHEREAS, the terms of all directors have now expired; and
WHEREAS, the undersigned shareholders, as the owners of six hundred (600) shares or sixty percent (60%) of the Corporation's issued and outstanding common stock, are entitled to elect four (4) of the Corporation's six (6) directors through the exercise of cumulative voting;
WHEREAS, the undersigned shareholders now desire to elect four (4) directors to replace four (4) directors whose terms have expired;
NOW, THEREFORE, BE IT RESOLVED, that J. David Tufts, III, Robert G. Tufts, Ruth Mary Gross Tufts and Claudia L. Tufts be, and they are hereby elected directors of the Corporation to serve until the next annual meeting at which directors are elected or until their successors are elected and qualified.
BE IT FURTHER RESOLVED, that Ruth Mary Gross Tufts and Claudia L. Tufts shall replace Frederick J. Tufts and James Reiss, whose terms as directors have expired.
According to the defendants, the three intended purposes of this written consent resolution were: (i) to remove Frederick Tufts and James Reiss as directors, (ii) to replace them with Ruth Tufts (David Tuft's mother) and Claudia Tufts (David Tuft's wife), and (iii) to remove and to simultaneously re-elect David Tufts and Robert Tufts as directors.[3]
On March 19, 2002, the Family Trust and the Children Trust gave notice of the actions they took by written consent to the 241 Trust. On that same date, the four directors purportedly elected pursuant to the written consent resolution (Ruth Tufts, Claudia Tufts, David Tufts, and Robert Tufts) gave notice to the two unaffected directors (Albert Crutcher and Mary Crutcher (the "Crutchers")) of a special meeting to be held on March 21, 2002. That notice indicated that the purpose of the special meeting was two-fold: to elect officers and to reconsider a certain management contract involving David Tuft's company. On the next day, March 20, 2002, the Family Trust and the Children Trust gave notice to the two removed directors, Frederick J. Tufts and James Reiss, that they had been replaced. The latter notice also stated that those directors terms had expired and that the owners of 60% of the shares of CTR had, by exercising their cumulative voting rights, elected four directors.
On March 21, 2002, the special meeting was held. This meeting was attended by the members of both the old board and the reconstituted board. Both boards simultaneously participated; thus, there are two conflicting versions of the minutes from that meeting. The old board voted to elect one slate of officers, and the reconstituted board voted to elect another slate of officers. The old board elected Albert Crutcher as president, Fred Tufts as secretary, and James Reiss as vice-president. The reconstituted board elected David Tufts as president, Robert Tufts as vice-president, and Ruth Tufts as secretary. Both boards elected Charles Phillips as treasurer.
On June 27, 2003, Albert Crutcher, Jr.; Mary Crutcher; Frederick Tufts; James Reiss; and Allison McAshan, as trustee of the 241 Trust (collectively the "Plaintiffs") *532 commenced this quo warranto action. Plaintiffs identify themselves as the officers, directors, or shareholders of CTR. As noted, Plaintiffs represent the minority shareholder, the 241 Trust. This action was filed against the following seven defendants: (1) David Tufts, individually; (2) Davit Tufts, as trustee of the Family Trust; (3) Hal Simeon, as trustee of the Children Trust; (4) Claudia Tufts; (5) Robert Tufts; (6) Ruth Tufts; and (7) Charles Phillips (collectively the "Defendants").[4] As noted, Defendants represent the majority shareholders, the Family Trust and the Children Trust.
The petition outlines the factual background of the claims at issue as follows. On March 7, 2002, CTR's six-member board of directors was composed of David Tufts, Robert Tufts, Frederick Tufts, Albert Crutcher, Jr., Mary Crutcher, and James Reiss.[5] On that date, the board voted against renewing a management agreement between CTR and Tufts Energy, L.L.C., a company controlled by David Tufts. Within days of that vote, David Tufts purported to reconstitute CTR's board. According to the petition, he took the following action:
Without conducting an election and without even notifying the 241 Trust, which is a shareholder of [CTR], [David] Tufts and others purported to remove four directors from [CTR]'s board; reappoint [David] Tufts and [Robert] Tufts; and then replace two of the directors with [Claudia] Tufts, the wife of [David] Tufts, and [Ruth] Tufts, the mother of [David] Tufts. In this manner, [David] Tufts asserted that he removed [Frederick] Tufts and [James] Reiss from the board of directors.
The quo warranto petition alleges that this attempt to reconstitute CTR's board was without effect because it did not comply with Delaware law. The petition thus seeks a declaration that: (i) Claudia Tufts and Ruth Tufts are not properly elected directors of CTR, (ii) Frederick Tufts and James Reiss remain directors of CTR, and (iii) CTR's officers are those that were elected on March 21, 2002 by the old board.
On July 10, 2003, a trial was held in the quo warranto action. At that trial, documentary evidence was introduced and arguments were heard, but no live testimony was taken. On January 28, 2004, the trial court rendered judgment in favor of the plaintiffs, granting the writ of quo warranto.[6] In its reasons for judgment, the trial court stated:
This Court finds that Ruth G. Tufts and Claudia L. Tufts were improperly placed on the Board of Directors, and therefore, had no authority to act as members of the Board of Directors of Crutcher-Tufts Resources, Inc.
Additionally, this Court finds that J. David Tufts acted improperly in the removal of James Reiss and Frederick J. Tufts by acting without proper notice or meeting as required by the Articles of Incorporation and the Amended and Restated Bylaws of Crutcher-Tufts Resources, Inc.
Additionally, this Court also finds that Frederick J. Tufts and James Reiss are hereby reinstated subject to other elections *533 or actions of the Board of Directors.
This appeal followed.

ANALYSIS
The proper procedure to try title to office in a private corporation is a writ of quo warranto. La. C.C.P. art. 3901, Official Comment (c)(citing Leidenheimer v. Schutten, 194 La. 598, 194 So. 32 (1940); State ex rel. Palfrey v. Simms, 152 So. 395 (La.App.1934)). A writ of quo warranto directs an individual to show cause by what authority he claims or holds office. La. C.C.P. art. 3901. A writ of quo warranto serves the narrow function of preventing the usurpation of office or of powers. Id. Unlike a mandamus, a writ of quo warranto is not an order directing the defendant to perform (or to cease performing) a certain act; rather, it is an order directing the defendant to show by what authority he or she is acting. La. C.C.P. art. 3901, Official Comment (e).
In a quo warranto action, the defendant has the burden of showing by what authority he or she claims to hold office. In re Interdiction of Vicknair, XXXX-XXXX, p. 4 (La.App. 1 Cir. 6/21/02), 822 So.2d 46, 50. If the court finds that burden is not met (i.e., that the defendant is claiming or holding office without authority), it is required to render judgment forbidding him or her from doing so. La. C.C.P. art. 3902. The court may also render judgment declaring who is entitled to office and, when necessary, directing an election be held. Id.
Because the issues presented in this quo warranto action are all legal ones, the standard of review is de novo. See Vanderhoff v. Beary, XXXX-XXXX, p. 2 (La.App. 4 Cir. 8/20/03), 853 So.2d 752, 754, writ denied, 2003-2895 (La.1/9/04), 862 So.2d 987 (citing Cleco Evangeline, LLC v. Louisiana Tax Comm'n, 2001-2162, p. 3 (La.4/02/02), 813 So.2d 351, 353). The legal issues presented in this action are two-fold; to-wit: (i) whether the § 228 written consent procedure can be used in lieu of a meeting to remove the directors of a corporation, like CTR, that has cumulative voting; and (ii) assuming the written consent procedure can be used, whether the majority shareholders possessed sufficient voting strength under § 141(k)(2) to remove the two targeted directors. Although these issues are intertwined, we separately address them.

WRITTEN CONSENT UNDER § 228
The written consent procedure is codified in § 228(a), which provides:
Unless otherwise provided in the certificate of incorporation, any action required by this chapter to be taken at any annual or special meeting of stockholders of a corporation, or any action which may be taken at any annual or special meeting of such stockholders, may be taken without a meeting, without prior notice and without a vote, if a consent or consents in writing, setting forth the action so taken, shall be signed by the holders of outstanding stock having not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting at which all shares entitled to vote thereon were present and voted.
8 Del. C. § 228(a).[7]
Defendants argue that both § 228 and CTR's bylaws authorize taking "any action" *534 by written consent that may be or is required to be taken at a stockholders' meeting. Defendants cite Delaware jurisprudence construing "any action" to include removal of a director. See Hoschett v. TSI International Software, Ltd., 683 A.2d 43, 46 (Del.Ch.1996)(construing "any action" literally to include shareholder action to remove directors from office). Defendants also cite § 211(b), which provides that "[s]tockholders may, unless the certificate of incorporation otherwise provides, act by written consent to elect directors."[8] Del. C. § 211(b). By analogy, Defendants argue that written consent applies to removal of directors. Quoting the introductory phrase to § 228(a)(i.e., "[u]nless otherwise provided in the certificate of incorporation"), Defendants contend that the shareholders' ability to take action by written consent may only be limited or eliminated by a provision in the certification of incorporation imposing such a restriction. Because CTR's certificate of incorporation contains no such restriction, Defendants contend that the written consent method they employed to remove the CTR directors was legally valid.
Plaintiffs, on the other hand, emphasize that § 141(k)(2) contains a special standard for removal of directors of a Delaware corporation, like CTR, that has cumulative voting. That special standard, Plaintiffs contend, requires an election be held at which the minority shareholder can cast its vote against removal. For that reason, Plaintiffs contend that Defendants' use of the written consent procedure to remove two directors was invalid. Citing the principle of statutory contruction that a specific statute controls over a general statute, Plaintiffs contend that § 141(k)(2) is a specific statute, which trumps § 228, which is a general statute.
Contrary to Plaintiffs' contention, we find no conflict between § 228 and § 141(k)(2). Rather, we find one is a procedural provision and the other is a substantive provision.
Section 141(k)(2) is a substantive provision that spells out the requirements for removing a director of a corporation having cumulative voting; it provides:
In the case of a corporation having cumulative voting, if less than the entire board is to be removed, no director may be removed without cause if the votes cast against such director's removal would be sufficient to elect such director if then cumulatively voted at an election of the entire board of directors.
8 Del. C. § 141(k)(2).
Section 228 is a procedural provision that authorizes shareholders, absent either a statutory prohibition or a prohibition in the corporation's certificate of incorporation, to act by written consent in lieu of a shareholder meeting.
CTR's certificate of incorporation contains no prohibition of shareholder action by written consent. Nor does Delaware corporate law contain a statutory prohibition on the use of the written consent procedure to remove directors of a corporation having cumulative voting. We thus find no procedural impediment to Defendants use of the written consent procedure to remove two CTR directors. This finding, however, does not resolve the question of whether Defendants' use of the written consent procedure was valid. The unresolved question arises because § 228 expressly limits the use of the written consent procedure to shareholder groups *535 that possess "the minimum number of votes that would be necessary to authorize or take such action at a meeting at which all shares entitled to vote thereon were present and voted." 8 Del. C. § 228(a). The applicable voting requirement for the removal action sought to be taken is spelled out in § 141(k)(2), quoted above and discussed next.

REMOVAL OF DIRECTORS UNDER § 141(k)(2)
Removal of directors of a corporation having cumulative voting is governed by the special standard set forth in § 141(k)(2). Defendants translate the requirement under § 141(k)(2) that the removal vote be counted as if "cumulatively voted at an election of the entire board of directors" literally to mean that all board seats must be voted upon. Defendants contend that the majority shareholders, as owners of 60% of CTR's stock, have the absolute right  both as a matter of law and mathematics  to control four of the six seats on CTR's board; conversely, the minority shareholder, as owner of 40% of CTR's stock, has the right to control only two seats. Defendants thus contend that regardless of how the minority shareholder votes it can never elect more than two directors.
Defendants note that the written consent resolution had the following impact on the board: (i) two of the four directors aligned with the minority shareholder were removed, (ii) those two directors were replaced with directors selected by and aligned with the majority shareholders, and (iii) the other two directors aligned with the minority shareholder (the Crutchers) were unaffected. The end result is that the reconstituted board is composed of four directors aligned with the majority shareholders and two aligned with the minority shareholder. Defendants emphasize that the resulting four to two seat ratio on the board parallels the ratio of ownership interests between the majority shareholders and the minority shareholder (i.e., 60% to 40%).
Defendants further contend that the minority shareholder lacked the voting strength to block the majority shareholders' removal of the two targeted directors. Defendants argue that at an election of the entire board (the standard under § 141(k)(2)) the minority shareholder would have been required to cast its votes to save the two seats held by the unaffected directors (the Crutchers). Continuing, Defendants contend that the minority shareholder could not have saved the unaffected directors' seats and simultaneously opposed the removal of the two targeted directors because it only controls two seats.
Conversely, Plaintiffs contend that Defendants confuse two separate issues: (i) whether the minority shareholder could have saved the two targeted directors from removal (Frederick Tufts and James Reiss) by voting against their removal, and (ii) whether the minority shareholder could have elected four directors (the Crutchers, Frederick Tufts, and James Reiss) at an ordinary election of all six directors. Plaintiffs emphasize that the latter election issue is not relevant because this case involves removal. Plaintiffs also emphasize that removal is governed by a different standard than ordinary elections. Given that this case involves the removal of directors, Plaintiff contends that the minority shareholder was not required to cast its votes to save the Crutchers' seats on the board and that the minority shareholder thus had sufficient votes to block the removal of the two targeted directors.
Plaintiffs further contend that Defendants' position that the majority shareholders are entitled to control four of the six seats on the board is premised on the *536 erroneous, unstated assumption that CTR has a classified board under which shares of stock are divided into classes, and each class is represented by a guaranteed number of seats on the board. Plaintiffs' position is persuasive. "In class (or series) voting, which is obviously possible only where two or more classes (series) of shares are outstanding, each class (series) of shares votes as a separate unit for one or more purposes." Harry G. Henn and John R. Alexander, Law of Corporations and Other Business Enterprises, § 189 (1983). All shareholders are not able to vote for all directors to be elected. Id. One class (series) of shares "vot[es] for its class of directors and another class (series) of shares separately vot[es] for its class of directors." Id. This is not CTR's model. CTR is a corporation having cumulative voting. "[C]umulative voting does not give shareholders the right to elect any particular number of directors, but rather simply gives the shareholders the right to spread an enhanced number of votes among a number of candidates." Larry D. Soderquist, Linda O. Smiddy, A.A. Sommer, Jr., and Pat K. Chew, Corporate Law & Practice § 12:2 (1999) ("Soderquist")(citing Stockholders Comm. for Better Management of Erie Technological Products, Inc. v. Erie Technological Products, Inc., 248 F.Supp. 380 (W.D.Pa.1965)).
The general rule allowing majority shareholders the power to remove directors elected by minority shareholders creates "obvious possibilities of getting rid of directors who have been elected by cumulative voting." Charles M. Williams, Cumulative Voting, 33 Harv. Bus.Rev. 108, 110 (1955); Henn, supra (describing this possibility as a "loophole" and noting that "[i]f directors are removable without cause by a simple majority vote of shareholders, a director elected by a minority of shareholders could be removed by the majority of shareholders.") Because of this possibility, state legislatures early on began enacting statutes similar to § 141(k)(2). See In re Rogers Imports, Inc., 202 Misc. 761, 762, 116 N.Y.S.2d 106, 107 (N.Y.Sup.Ct.1952).
The parallel provision of the Model Business Corporation Act ("MBCA") to § 141(k)(2) is MBCA § 8.08 (former MBCA § 39), which provides: "[i]f cumulative voting is authorized, a director may not be removed if the number of votes sufficient to elect him under cumulative voting is voted against his removal." MBCA § 8.08. The official comments to this parallel provision explain that "[t]his provision guarantees that a minority faction with sufficient votes to guarantee the election of a director under cumulative voting will be able to protect that director from removal by the remaining shareholders." Model Business Corporation Act Annotated, Official Comment to § 8.08 (1997 Supp.). The official comments also enumerate the following three-step process for counting votes for and against removal of a director of a corporation having cumulative voting; to-wit:
[T]he votes should be counted as though:
(1) the vote to remove the director occurred in an election to elect the number of directors normally elected by the voting group along with the director whose removal is sought,
(2) the number of votes cast cumulatively against removal of the director had been cast for his election, and
(3) all votes cast for removal of the director had been cast cumulatively in an efficient pattern for the election of a sufficient number of candidates so as to deprive the director whose removal is being sought of his office.
Id.
Application of the first two factors is straightforward. The first factor refers to *537 the presumption that the entire board is up for election. In this case, CTR has six directors and thus the majority shareholders, which own 600 votes, had 3,600 votes to cumulatively cast, and the minority shareholder, which owns 400 votes, had 2,400 votes to cumulatively cast. The second factor presumes the votes cast against removal were cumulatively cast in favor of the targeted director. The minority shareholder's 2,400 votes (which we assume would be cast against removal) are presumed to be cast in favor of the two candidates targeted for removal; dividing those votes equally, it can be presumed that the minority shareholder cast 1,200 votes for each of those directors.
Application of the third factor requires an understanding of the meaning of an "efficient" pattern of cumulative voting. An efficient pattern is determined by applying a formula that has been crafted for determining how many directors can be elected with a particular number of shares. Soderquist, supra. A simplistic, verbal expression of the formula is that "each group, majority or minority, should ascertain the proportion which the number of shares which it holds bears to the number of shares which it expects to be voted at the election, and then vote its shares cumulatively for that proportion of the number of directors to be elected." Henry Ballantine, Ballantine on Corporations, § 177 (1946).
A more complex mathematical expression of the formula is as follows:

X = (N-1)(D +1)/S
X = Number of directors who can be elected with N shares
N = Number of shares controlled by shareholder or shareholder group
D = Number of directors to be elected at the meeting
S = Number of shares to be voted by all shareholders
Soderquist, supra. Once the number of directors who can be elected by a given number of votes is determined, the second step in achieving an efficient pattern of cumulative voting is for the shareholder "to distribute their votes as evenly as possible among their candidates." Id.
In this case, the formula establishes that the majority shareholders by efficiently voting their shares could elect four directors. It follows then that if the majority shareholders spread their 3,600 votes over four directors, each director would get 900 votes. As noted, the minority shareholder is presumed to have cumulatively cast its votes in favor of the directors targeted for removal; thus, it can be presumed the minority shareholder cast 1,200 votes to each targeted director. As a result, these calculations establish that the minority shareholder, contrary to Defendants' contention, possessed sufficient voting strength to block the removal of the two targeted directors.
Summarizing, given Defendants lacked the voting strength required to remove the two targeted directors under § 141(b)(2), their attempted use of the written consent procedure to remove those directors and to reconstitute the board was not legally valid. We thus find no error in the trial court's finding in favor of the Plaintiffs in this quo warranto action.

DECREE
For the foregoing reasons, we affirm the judgment of the trial court.
AFFIRMED.
NOTES
[1] Stipulating that the relevant facts are undisputed, the parties presented this matter to the trial court as a pure legal matter. As the parties point out, the factual disputes between them are the subject of a separate damage action. Indeed, the quo warranto petition alleges that this is a "related case," as defined by the Civil District Court local rules. Although this action was initially allotted to Division "A", on the plaintiffs' motion it was transferred to the division in which the related damage action is pending, Division "N."
[2] Although the plaintiffs dispute whether the Children Trust's shares are voting shares, they agreed that they would not dispute this issue for purposes of resolving the quo warranto action.
[3] Although the defendants refer to the dispute as involving the removal and replacement of four directors, their inclusion of the removal and simultaneous re-election of David Tufts and Robert Tufts as directors technically is incorrect. We do not view these two directors as having been removed. This dispute thus only involves removal of two directors, Frederick Tufts and James Reiss.
[4] Although not named as a party, CTR was allowed to intervene in this action.
[5] The petition notes that David Tufts submitted a letter of resignation from the board in 2000, but indicates that he was still acting as a director.
[6] The trial court's judgment recites that on November 25, 2003, the bankruptcy court modified the stay to permit the Civil District Court to issue judgment in the instant quo warranto action.
[7] Although Plaintiffs complain that the minority shareholder did not receive advance notice, § 228 does not require advance notice. That statute only requires that "prompt notice of the taking of the corporate action without a meeting by less than unanimous written consent shall be given to those stockholders or members who have not consented in writing."
[8] Del. C. § 228(e). As noted, the majority shareholders gave written notice to the minority shareholder, the 241 Trust, within days of the written consent. The timeliness of that notice is not contested.