Judge Daniel L. Dysart
|, Plaintiffs-appellants, former members of the Board of Directors of the English Turn Property Association, Inc. (“ET-POA”), appeal the trial court’s judgment dismissing their quo warranto petition. Defendant-appellees recently filed a Motion to Dismiss the appeal. For the reasons that follow, we deny the Motion to Dismiss and we affirm the trial court’s judgment.
FACTS AND PROCEDURAL HISTORY
On March 19, 2015, the ETPOA filed a quo warranto petition, on behalf of four of its five directors of its Board of Directors—Val Exnicios, Jack Sutton, Dr. Bart Farris and Sandra Tate (hereafter sometimes collectively referred to as “plaintiffs”)—all of whom are residents of the English Turn Golf & Country Club community (“English Turn”). The ETPOA claimed that the defendants, Scott Taran-to, Sam Morse, Glenn Orgeron, Lisa Africk and Deidra Edwards (hereafter sometimes collectively referred to as “defendants”), also residents of English Turn, were “illegally and improperly attempting to assume positions as Directors of ETPOA without authority and prior to any election results being declared as final.”
In its suit, the ETPOA sought a judicial determination of “the authority, if any [by which] Defendants claim to hold office.” It alleged that, without “an ^accurate count of all eligible property owners appearing in person or valid proxy... the quorum necessary to hold and [sic] Annual Meeting of ETPOA can not [sic] be determined.” According to the ETPOA, there was an annual meeting “attempted to be held” on February 11, 2015. The ETPOA alleged that “until and unless an accurate count of all eligible property owners appearing in per *385 son or valid proxy is determined, the quorum requirement necessary to hold and [sic] annual meeting could not be determined.” The effect of “a lack of a quorum is that no valid business, or any election of Directors, can be held.” In that regard, the ETPOA maintained that “many of the proxies [for the February 11, 2015 meeting] secured by one of more of the Defendants herein were invalid, improper and/or improperly obtained, thus rendering them null.” It likewise maintained that a CPA, retained “to supervise the election, count the ballots, and determine the validity of the proxies and render an opinion as to the final election results,” “had not yet vetted the proxies or otherwise rendered his opinion regarding the validity of the election.”
In response to the quo warranto petition, defendants filed a peremptory exception of no right of action and a dilatory exception of lack of procedural capacity, challenging the ETPOA’s right and capacity to bring the suit and seeking to have the individual board members substituted as plaintiffs. After a hearing on the exceptions and by judgment dated July 22,2015, the trial court sustained the exceptions and allowed the ETPOA fifteen days within which to amend its quo warranto petition.[1] The ETPOA filed an application for a writ of supervisory review with this Court, seeking a reversal of the trial court’s grant of defendant’s ^exceptions. This Court denied the writ application on September 30, 2015. English Turn Property Owners Association v. Scott Taranto, et al., 15-0959 (La. App. 4 Cir. 9/30/15)(unpub.). By way of a First Supplemental and Amending Petition filed bn September 3, 2015, the ETPOA was substituted by the plaintiffs.[2]
A hearing on the quo warranto petition was held on'November 4, 2015. By judgment dated November 9, 2015, the trial court found in favor of the defendants and dismissed the quo warranto with prejudice.
The plaintiffs moved for a new trial which was denied by the trial court on November 30, 2015. In the November 30, 2015 judgment, the trial court canceled the previously scheduled hearing on the plaintiffs’ motion for new trial (which was scheduled for January 8, 2016) as moot. The record reflects that, despite the trial court’s having denied the motion for new trial on November 30, 2015, plaintiffs filed a supplemental/reply memorandum in support of their motion for new trial on December 22, 2015. For reasons that are not clear from the record, the trial court then held a hearing on the motion for new trial on January 8, 2016 and, again, denied the motion for new trial by judgment dated January 15, 2016.
Plaintiffs filed a motion to appeal the judgments of November 9, 2015 and January 15, 2016 on February 4, 2016.[3]
*386 J^MOTION TO DISMISS
On March 15, 2017, defendants filed a Motion to Dismiss this appeal on the basis that their terms of office ended when a new board of directors was elected on March 8, 2017, and therefore, the issues under review in this appeal are now moot, citing Hardy v. Albert, 225 So.2d 127 (La. App. 4th Cir. 1969). In Hardy, this Court found “that since the contested terms of the defendants have, expired, and a new election has been held prior to the final determination of the issues raised in the quo warranto proceeding, the question.. .regarding the defendants’ legal right to occupy the offices of directors of the homestead is now moot, and must therefore be dismissed.” Id., 225 So.2d at 128.
In the instant, matter, while a new election may have recently taken place and a new board of directors elected, these facts are not part of the record on appeal. Our jurisprudence is clear that “[t]he appellate briefs and motions of the parties and attachments thereto are not a part of the record on appeal, and this court has no authority to consider on appeal facts referred to therein, or in exhibits attached thereto, if those facts are not in the record on appeal.” Fisher v. Majestic Trucking, Inc., 09-1398, p. 4 (La.App. 4 Cir. 3/17/10), 35 So.3d 384, 387, citing Board of Directors of Industrial Development Board of City of New Orleans v. All Taxpayers, Property Owners, Citizens of City of New Orleans, 03-0826, p. 4 (La.App. 4 Cir. 5/29/03), 848 So.2d 740, 744 (emphasis in original).'
It is unclear in Hardy whether the election of the new directors took place before the judgment denying the quo warranto petition was appealed. It is likewise unclear whether the matter of the new election was part of the record of the Hardy appeal. Given that the trial court judgment in Hardy was rendered on December 17, 1968 and the new directors were elected less than a month later, on January 15, |fi1969, it is likely that the new election took place before the appeal was filed and was thus part of the appellate record.
Here, while the Motion to Dismiss informs this Court that a new election occurred and attaches an affidavit attesting to that fact, with a copy of the election results, neither the affidavit nor the election results are part of the record on appeal. Accordingly, as a court we cannot consider any document or pleading not forming part of the record on appeal and for that reason, we deny the motion to dismiss.
We now turn to the issues on appeal.
DISCUSSION

Peremptory exceptions of no right of action and lack of procedural capacity

As their first assignment of error, plaintiffs argue that the trial court erred in granting defendants’ peremptory exceptions of no right of action and lack of procedural capacity. As previously noted, the ETPOA raised these very issues in an application for a writ of supervisory review which was denied by this Court in September, 2015. However, our jurisprudence reflects that the “denial of supervisory review is merely a decision not to exercise the extraordinary powers of supervisory jurisdiction, and does not bar reconsideration .of, or a different conclusion on, the same question when an appeal is taken from a final judgment.” Sattar v. Aetna Life Ins. Co., 95-1108, pp. 4-5 (La.App. 4 Cir. 3/20/96), 671 So.2d 550, 552.
“We review de novo a trial court judgment sustaining an exception of no *387 right of action as -a question of law and determine whether the trial court’s ruling was correct or incorrect as a matter of law.” First Bank & Trust v. Duwell, 11-0104, p. 4 (La.App. 4 Cir. 5/18/11), 70 So.3d 15, 18. The de novo standard of preview also applies to our review of the trial court’s ruling on a dilatory exception of lack of procedural capacity. Wells v. Fandal, 13-620, p. 7 (La.App. 5 Cir. 2/12/14), 136 So.3d 83, 87, unit denied, 14-0511 (La. 4/25/14), 138 So.3d 645. After our. careful review of the record, as explained more fully below, we find that the trial court correctly granted the exceptions,
The peremptory exception of no right of action “raises the question of whether the plaintiff has the capacity or legal interest in judicially enforcing the right asserted.” Alden v. Louisiana Citizens Prop. Ins. Co., 16-0044, p. 4 (La.App. 4 Cir. 6/29/16), 197 So.3d 312, 315. Under La. C.C.P. art. 681, too, “[a]n action can be brought only by a person having a real and actual interest which he asserts.” This exception “questions whether the party against whom it is asserted has an interest in judicially enforcing the right alleged against the exceptor.” Touzet v. V.S.M. Seafood Services, Inc., 96-0225, p. 2 (La. App. 4 Cir. 3/27/96), 672 So.2d 1011, 1012. “When considering the exception, the court must ask whether the plaintiff belongs to a particular class for which the law grants a remedy for a particular grievance or whether the plaintiff has an interest in judicially enforcing the right asserted.” Id., pp. 2-3, 672 So.2d at 1012.
“The dilatory exception of lack of procedural capacity raises the issue of want of capacity of the plaintiff to institute and prosecute the. action and stand in judgment, and/or challenges the authority of a plaintiff who appears in a purely representative capacity.” Harvey v. State, 14-0156, p. 12 (La.App. 4 Cir. 12/16/15), 183 So.3d 684, 695, writ denied, 16-0105 (La. 3/4/16), 188 So.3d 1060, quoting Gibbs v. Magnolia Living Center, Inc., 38,184, p. 2 (La.App. 2 Cir. 4/7/04), 870 So.2d 1111, 1113.
|7We discuss the two exceptions together, because the" same reasoning applies to the underlying arguments for both exceptions in -this case. We have found, infra, that the trial court correctly held that defendants have shown their authority to serve as members of the ETPOA Board of Directors. In this regard, we have found the Februaryll, 2015 election to be valid and the defendants to have been legally elected to their positions. While plaintiffs maintain that a February 24, 2015 Resolution of the ETPOA authorized plaintiffs to bring the quo warranto action on behalf of ETPOA, they were no longer members of the Board of Directors, and no longer had power to act on behalf of ETPOA.[4] Accordingly, they could no longer act on behalf of the ETPOA as members of the Board of Directors. For this reason, alone, these issues are moot. We also, note that at least one court has recognized that “[i]n a petition for quo warranto, the only parties ‘necessary' are those claiming or vying for the office at issue.” Smith v. Cannon, 43, 964, p. 3 (La.App. 2 Cir. 1/28/09), 2 So.3d 1227, 1230.

Quo warranto proceeding

A “[q]uo warranto is a writ- directing an individual to show by what authority he claims or holds public office, or office in a corporation, or directing a corporation to show by what authority it exercises *388 certain powers. Its purpose is to prevent usurpation of office or of powers.” La. C.C.P. art. 3901. As this Court has recognized, the “proper procedure to try title to office in a private corporation is a writ of quo warranto.” Crutcher v. Tufts, 04-0653, p. 6 (La.App. 4 Cir. 2/16/05), 898 So.2d 529, 533. This Court has also repeatedly recognized the limited nature of the quo warran-to procedure; we recently reiterated, in Camillus Specialty Hosp., 8L.L.C. v. Riccio, 13-1172, p. 6 (La.App. 4 Cir. 1/30/14), 133 So.3d 287, 291, that the “writ of quo warranto is narrow in scope and is to be given only a limited use, which is to prevent usurpation of office or of powers.” See also, Menard v. City of New Orleans Enf't & Hearings Bureau, 12-1161, p. 6 (La.App. 4 Cir. 1/18/13), 108 So.3d 340, 344, writ denied, 13-0278 (La. 8/30/13), 120 So.3d 261; Crutcher, 04-0653, pp. 6-7, 898 So.2d at 533.
The burden of proof in a quo warranto proceeding is on the defendant to prove by what authority he or she claims to hold office.[5] Menard, 12-1161, p. 4, 108 So.3d at 343, citing Crutcher, 04-0653, p. 7, 898 So.2d at 533. In Menard, we noted:
If the court finds that burden is not met, that the defendant is claiming or holding office without authority, it is required to render judgment forbidding him or her from doing so. The court' may also render judgment declaring who is entitled to office and, when necessary, directing an election be held.
Id. As an appellate court, we review the trial court’s factual findings under a manifest error/clearly erroneous standard. Metro City Redevelopment Coal., Inc. v. Brockman, 13-1615, p. 5 (La.App. 1 Cir. 3/21/14), 143 So.3d 495, 498; Hale v. Liljeberg, 04-861, p. 8 (La.App. 5 Cir. 1/25/05), 895 So.2d 28, 32. We do note, as plaintiffs contend, that where “legal errors have tainted the fact finding process, the verdict below is not reviewed under the manifest error standard and, if the record is complete, the appellate court may make a de novo review of the record.” 9Smith v. Johnson, 99-1513, p. 26 (La.App. 4 Cir. 5/23/01), 789 So.2d 672, 687. (Emphasis added). After our thorough review of the record, we do not find any legal errors which “have tainted the fact finding process.”
There can be no dispute that the February 12, 2015 Election Results contained in the record reflect that 377 ballots were cast, and that the five persons receiving the highest number of votes (for election to the Board of Directors) were: Lisa Africk, Diedra Edwards, Sam Morse, Jr., Glen Orgeron, and Scott Taranto. By receiving the highest number of votes and thereby winning the election, defendants have shown the authority for their holding the positions of members of the Board of Directors of ETPOA.[6] Plaintiffs, however, dispute the validity of the election, claiming that the votes were not valid and more specifically, that the proxies for the absentee ballots were not shown to be legiti *389 mate.[7] Intertwined with this issue is plaintiffs’ contention that the absentee ballots were not “vetted,” that a quorum was not present for the voting and therefore, the election was invalid.
The ETPOA documents consist of the Declaration of Covenants, Conditions, and Restrictions (the “Covenants”), Articles of Incorporation (the “Articles”) and ByLaws. The Articles state that the ETPOA is a “non-profit corporation” which is “authorized to exercise and enjoy all of the powers, rights and privileges granted to or conferred upon non-profit corporation: by the Louisiana Non-Profit Corporation Law.” (Articles, Art. II and III). The Articles further provide that |1fl“[a]Il of the powers of the [ETPOA] shall be subject to and shall be exercised in accordance with the provisions of the [Covenants].” (Articles, Art. III).
Under the Articles, the “Board of Directors shall consist of not less than three (3) nor more than five (5) members,” as provided in the By-Laws, and each Director serves for a term of two years (Articles, Art. VII and By-Laws, Art. 4, Sec. 4.1).[8] The By-Laws call for an annual meeting in February and for election years, “[p]ersons may be nominated for election to the Board of Directors by a nominating committee appointed by the incumbent Board prior to the annual meeting and by nominations from the floor at the meeting.” (By-Laws, Art. 3, Sec. 3.2). The election of the Board of Directors is “by secret written ballot, unless dispensed by unanimous consent, and at such election members and their proxies may cast, with respect to each vacancy, the votes appurtenant to their respective Lots or Dwellings.” (By-Laws, Art. 4, Sec. 4.7).[9] “[T]he persons receiving the greatest number of votes shall be elected to fill the vacancies on the Board of Directors.” Id.
With respect to a quorum, the By-Laws provide the following:
[By-laws, Art. 3,] Sec. 3.6. Quorum. At all membership meetings, annual or special, a quorum shall be deemed to be present through any meeting until adjourned if Owners entitled to cast a majority of the votes of the Association are present in person or by proxy. For purposes of the By-Laws, “majority” shall mean more than fifty (50%) percent....
Proxies are governed by Article 3, Section 3.8 of the By-Laws, which states that “[t]he vote of any Owner may be cast pursuant to a proxy or proxies executed hiby or on behalf of the Owner delivered to the Secretary of the [ETPOA].” This section further provides that “[n]o such proxy shall be revocable except by written notice delivered to the Secretary of the [ETPOA] by the Owner.” Otherwise, a proxy is void if (a) it is not dated; (b) it purports to be revocable without the notice required; or (c) eleven (11) months have elapsed since it was executed. (By-Laws, Art. 3, Sec. 3.8).

Quorum

Under the By-Laws, a quorum is met when a majority of the Owners entitled to cast a majority of the votes (namely, more than fifty percent (50%)) is present, either in person or by proxy. *390 Plaintiffs contend that “no quorum” was established and in support of that argument, submitted virtually identical affidavits of Jack Sutton and Dr. Bart Farris,[10] in which each affiant, stated that “[n]o quorum was certified or ¡otherwise established.” Plaintiffs further rely on Mr. Sutton’s affidavit in which he states that “no proxies (except those given to me personally to vote) were delivered to [him] either for verification or otherwise prior to the election.” (Emphasis supplied). Plaintiffs maintain that, under Art. 3, Sec. 3.8, only those proxies “duly executed” by or on behalf of an owner and delivered to the Secretary of the ETPOA may be cast as votes for the election.[11]
We note that Mr. Sutton does not state the number of proxies that were given to him and there is nothing in the record which indicates how many of the votes were cast by owners present or by proxy. By virtue of the number of votes cast 112(377), it is clear that a quorum was met.[12] Plaintiffs, however, seem to contend that because the proxies were not verified, they are invalid, cannot be counted and thus, a quorum was 'not met.[13] Even if we were to assume that the proxies were somehow invalid, there is nothing in the record by which we could determine-that the majority votes were not cast by members present als the meeting, or'that the-proxies comprised the majority- of votes, so as to find that no quorum was met.
Moreover, the By-Laws specifically address the situation of the failure to obtain a quorum; Under Art. 3, Sec. 3.7, the ByLaws state that ■ “[a]ny meeting of the membership which cannot be organized because. a quorum had not attended may be adjourned from time to time by the vote of a majority of the Owners present or represented by proxy.” Had plaintiffs believed, prior to the election, that a quorum was not present at the February 11, 2015 meeting, they could have invoked this provision and sought to adjourn the meeting to a later' date, when a quorum could be met. Their failure to do so belies their argument that there was no quorum.
We likewise find no merit in plaintiffs’ contention that challenges regarding the validity, of the proxies were lodged, “prior to the attempted election.” In support of this argument, plaintiffs argue that challenges to proxies “were officially lodged by at least 3 Directors with the ETPOA Secretary prior to the purported election.” They then point to the affidavits of Mr. Sutton and Dr. Farris in support 113of this argument. Those .affidavits, however, merely state that “in my capacity as [Secretary and Parliamentarian, respectively], *391 Val Exnicios, Dr. Bart Farris and Sandra Tate [or, -with respect to Dr. Farris’ affidavit, Val Exnicios, Jack Sutton and Sandra Tate], all Directors along ■with me of the ETPOA, notified me prior to February 11, 2015 that they, challenged any and all proxies sought to be voted on February 11, 2015, and particularly any and all proxies sought to be voted by Scott Taranto.”
While Mr. Sutton and Dr. Farris attested to the fact that they were generally challenging proxies, there is no evidence that any particular proxy was challenged. Nor is there any evidence in- the record that any particular proxy was invalid or obtained under-false pretenses as plaintiffs claim.-Plaintiffs did not submit any affidavit of any member of the ETPOA which corroborates their contention that his or her proxy was fraudulently obtained or, as plaintiffs stated in their pre-trial supporting memorandum, that “one or more candidates were potentially soliciting proxies on false and/or incomplete representations.”
Furthermore, the By-Laws specifically provide for the “self-governance of the [ETPOA] ” and incorporate “the Louisiana Non-Profit Corporation Law,” found at La. R.S. 12:201 et seq. (By-Laws, Art. 1, Sec. 1.3). La. R.S. 12:232, which deals with “voting of members” provides that “[a] proxy regular on its.face, and signed in the name of a member entitled to vote at the meeting, shall be deemed valid unless challenged before it is voted, and the burden of proving invalidity shall be on the challenger.” La.R.S. 12:232 C(4). While there is scant case law interpreting this statute, its plain language contemplates that challenges be made to specific proxies. It further contemplates that the specific proxies are to be challenged prior to their-being voted. Here, plaintiffs did not challenge specific |uproxies prior to the election (or at the election itself), where they would have had the burden of proving their invalidity. Their failure to do so renders the proxies “regular on [their faces]” to be deemed valid. ■
We likewise find no merit to plaintiffs contention that, because all of the proxies were not delivered to Mr. Sutton personally, this violated the By-Laws, rendering the voting invalid. As evidenced by the ETPOA letter-sent to the residents of the subdivision, containing the names of all of the then Board of Directors, several means were established by which residents could issue proxies, including filling out the attached form and faxing it to the office, dropping the form off at the sales center or with one of the guards, or scanning the form and mailing it to Margeaux Fanning, the Administrator for the ETPOA.[14] Because the Board of Directors expressly deviated from the provisions of Art. -3, Sec. 3.8 by allowing proxies to be submitted in manners other than by delivering, them to the Secretary, of the ETPOA, they cannot now complain' of the impropriety of the submission of proxies.[15]

Certification of election results

Plaintiffs next contend that there was “no- ‘certification’ of any purported election results” because “[t]he individuals purporting to ‘certify1 the purported election results were in fact never authorized by the ETPOA Board of Directors to do so.” This contention is negated by the elec *392 tion results themselves which state that the “duly elected inspectors of election after having first determined the 11fivalidity of proxies and ballots certify the ... election results for the [ETPOA] ” and list the five persons receiving “the highest number of votes.” It is signed by four persons: Cynthia Sacks, Richard Faust, Bob How-son and Terry Jacobsen, CPA. Also noted were three observers: Larry Tucker, Dan Dreiling and Gary Braun.
The affidavits of Mr. Sutton and Dr. Farris, both indicate that:
The protocol agreed to on the night of the attempted election to provisionally verify ballots .case in person or by proxy... was that retained CPA Terry Jacobsen would maintain exclusive control of the ballots casts [sic] in person or by proxy and that an initial evaluation of said ballots would be conducted jointly by Mr. Jacobsen... [Ms.] Sacks, Bobby Harges, Esq., [Mr.] Faust and [Mr. Howson] at a mutually agreeable time and place when all were available; that contrary to the agreed upon protocol, a meeting of all 5 individuals was not conducted but rather a meeting was called by [Mr.] Faust and [Mr.] Howson (who were the choices of the other candidates) with Terry Jacobsen and Cynthia Sacks.
Plaintiffs maintain that Mr. Harges was not notified of any meeting and therefore did not participate in the meeting. Notably, plaintiffs did not offer an affidavit of Mr. Jacobsen or Mr. Harges and can point to no irregularities in the manner in which the votes were counted. The election results were confirmed by four persons, two of whom plaintiffs concede they selected (Mr. Jacobsen and Ms. Sacks) and we therefore find no basis to set aside the election results or order that a new election take place. Nor have plaintiffs demonstrated that the election results were improperly comprised of invalid proxies.
Likewise, nothing in the By-Laws requires that proxies be “vetted” so as to ensure their accuracy or validity. Again, plaintiffs offered no evidence, by way of affidavits of members voting by proxy, to suggest that their proxies were improperly procured and therefore, invalid. Nor have plaintiffs offered any evidence to suggest that the votes were improperly tabulated or that, the | ^certification by the four persons who signed the election results was otherwise tainted. Nor did plaintiffs offer an affidavit of Mr. Jacobsen to corroborate that he was retained to “vet” the proxies after the election. The affidavit of Sam Morse, both a former and current member of the Board of Directors, states that, at the February 11, 2015 annual meeting, “neither the Board of Directors nor the members of the association agreed that proxies would need to be vetted or validated after such proxy vote was cast in order for it to be considered valid.”
Based on the actual certification of the election results, and the affidavit of Ms. Fanning, which attests to the fact that she verified that the ballots were either submitted by members present or by proxies submitted by members in good standing, we find the certification to be conclusive evidence of the election results. We further find that these election results demonstrate the authority by which defendants hold positions on the ETPOA Board of Directors.

Meeting protocol and other alleged improprieties

The By-Laws provide in Art. 8, Sec. 3.5 for a certain order of business “at all annual membership meetings.”[16] Plain *393 tiffs maintain that this protocol-was not followed on February 11, 2015. In support of this argument, plaintiffs point to the affidavits of Mr. Sutton and Dr. Farris who attested to the fact that this section of the “By-Laws was Inadvertently not followed.” The affidavits further state that “the inadvertent failure to adhere to the election requirements mandated by the By-Laws was not intentional by me or, to the best of my knowledge, information and li7belief, by any other. Director... but rather was a result of constant interruptions in the proceedings by certain ETPOA property owners... that caused great tension and discord during the attempted proceedings such that fatal errors were made.”
Plaintiffs cite no case law in support of their contention the election was invalid based on the failure to follow the order of annual meetings prescribed by Sec. 3.5. Nor do we find the election to be invalid based on the assertion that Sec. 3.5 was not rigidly followed.
While plaintiffs maintain that the minutes of the February 11, 2015 meeting, submitted by defendants with their pre-hearing memorandum, should be disregarded because they were authored by Deidra Edwards (because she was not sérving as Secretary of the ETPOA on February 11, 2015),[17] Mr. Sutton, who was the Secretary at the time, prepared no countervailing minutes of the meeting. In his affidavit, though, he states that the “official Minutes of the February 11, 2015 attempted election and meeting kept by me as Secretary of ETPOA reflect that no quorum was established....” Notably, Mr. Sutton did not attach a copy of what he considers to be the “official Minutes” of that meeting.
The By-Laws expressly provide that “each Director elected by the members shall serve until the annual meeting at which his term expires and until his successor has been duly chosen and qualified.” (By-Laws, Art. 4, Sec. 4.6). Thus, Mr. Sutton’s term • expired on February 11, 2015, and, as we have found herein, a new Board of Directors came into power at the time that the election was certified. We cannot say, therefore, that the minutes of the meeting are to be disregarded | ^altogether. Those minutes indicate that the meeting on February 11, 2015 was presided over by Val Exnicios, as President of the ETPOA, and that certain formalities were disregarded. Indeed, after an objection was lodged “on the grounds that Section 3.5 of the Association’s ByLaws” was not being followed', insofar as “three prior agenda items... had not yet. occurred” before the presentation of certain reports, Mr. Exnicios noted the objection and then carried on with the meeting. Thereafter, Dr. Farris “made' a motion to follow the agenda for the meeting and election which was customarily employed in past meetings, even if not following the precise order of business in Section 3.5. This Motion was seconded and passed.”
Because the order of business was conducted as the then Board of Directors saw fit (and pursuant to Dr. Farris’ motion), plaintiffs cannot now claim that the meeting was invalid based on this alléged irregularity. See, e.g. Cox v. Dep’t of Highways, 252 La. 22, 209 So.2d 9, 11 (1968)(“one *394 should not be able to take advantage of his own wrongful act.”).
Finally, without any real discussion (plaintiff merely list this as one of the statements in the affidavits óf Mr. Sutton and Dr. Farris), plaintiffs also suggest that the nominating procedures were not followed, citing Art. 4, Sec. 4.7 of the ByLaws. That section provides that “[pier-sons may be nominated for election to the Board of Directors by a- nominating committee appointed by the incumbent Board of Directors prior to the annual meeting and by nominations made from the floor at the meeting.” The record is void of any evidence as to how any person came to be nominated for office and came to be listed on the ballot. In that regard, there is no information about .how plaintiffs, who sought re-election, were nominated for the election either and plaintiffs seemingly do not contest that they were properly 119nominated. We also find nothing in the record which suggests that an objection was lodged with respect any nominations. Accordingly, we cannot find any impropriety with respect to the nomination of any person to the position of member of the Board of Directors.

Evidence at hearing

Val Exnicios, counsel for plaintiffs, maintains that the trial court erred in refusing to allow him to testify at the quo warranto hearing. We find no error in the trial court’s ruling.
First, quo warranto may be tried as a summary proceeding. La. C.C.P. art. 3781. As the Louisiana Supreme Court explained, summary proceedings [like quo warranto hearings] “are those which are conducted with rapidity within the delays allowed by the court, and without citation and the observance of all formalities required in ordinary proceedings.” Clay v. Clay, 389 So.2d 31, 34-35 (La. 1979), citing La. C.C.P. art. 2591.
In this case, defendants moved to set a return date for the submission of all evidence and requested a hearing date. The trial court then scheduled a hearing and ordered plaintiffs to produce “all evidence in support of the Quo Warranto Petition” along with a supporting memorandum. Defendants were also ordered to produce “all evidence relied upon in Response to the Writ of Quo Warranto,” along with an opposing memorandum.
It was well within a trial court’s authority to decide what evidence will be allowed at a hearing on a quo warranto petition. Our jurisprudence indicates that a “trial court has great discretion in the admissibility of evidence and its decision to admit or exclude evidence may not be reversed on appeal absent a dear abuse of that discretion.” Ratliff v. LSU Bd. of Supervisors, 09-0012, p. 12 (La.App. 4 Cir. 205/7/10), 38 So.3d 1068, 1077. The Ratliff court acknowledged that an appellate court is to “consider whether the complained-of ruling was erroneous [as to the admission of evidence] and, if so, whether the error affected a substantial right of the complaining party.” Id, Here, it is clear that the trial court contemplated that all evidence in support of, and in opposition to, the writ of quo warranto be submitted prior to the hearing date. And, as we have found herein, the evidence clearly supported the trial court’s finding that defendants showed their authority to be members of the Board of Directors. We And no reversible error or abuse of discretion in the trial court’s denial of Mr. Exnicios’ request to testify at the hearing.
CONCLUSION
Based on the foregoing, we And no error in the trial court’s ruling that “the defendants have shown by what authority 'they *395 claim to be directors of English Turn Property Owners Association.” We likewise find no error in the trial court’s denial of the Petition for Quo Warranto. Accordingly, the judgment of the trial court dismissing plaintiffs petition for a writ of quo warranto is affirmed.
AFFIRMED

. The ETPOA filed a motion for new trial, which was denied on September 1, 2015, although the ETPOA was granted fifteen days from that date to amend its petition.

. The record reflects that the defendants then filed a second exception of no right of action on October 8, 2015, challenging the .capacity of Val Exnicios to bring suit on the basis that he is not a member of the ETPOA and does not own a lot or dwelling in the English Turn subdivision. While this exception was scheduled for hearing on December 4, 2015, there is nothing in the record regarding the outcome of that hearing.

.We note that the trial court denied the plaintiffs’ motion for new trial on November 30, 2015 and the Order reflects a request for service of the denial on counsel for plaintiffs. The motion for appeal, filed on February 4, 2016, would therefore be untimely. However, there is nothing in the record indicating that this November 30, 2015 order was actually served and no notice of the signing of this judgment. We therefore consider the denial of the plaintiffs’ motion for new trial dated January 15, 2016 as the date on which the appellate delays began; notice of that judgment was sent on the same day that judgment was *386 rendered. See La. C.C.P. arts. 1913, 1974, 2087 and 2123.

. Because we have found that plaintiffs were no longer members-of the Board of Directors when the Resolution was passed, we need not ' address whether the Resolution was valid and complied with the By-Laws of the ETPOA.

. Under La. C.C.P. art. 3781, a quo warranto proceeding may be tried summarily. See also, Yee v. World, 08-814, p. 6 (La.App. 5 Cir. 3/24/09), 10 So.3d 791, 793. In accordance with this rule, the trial court ordered the parties to submit memoranda prior to the hearing setting forth their respective positions.

. The record does not contain documentation reflecting the number of owners eligible to vote. Throughout the record, however, defendants assert that there were 564 lot owners who were eligible to vote and thus, the 377 votes cast (either in person or by proxy) met the quorum requirement. Quorum, as discussed below, is more than fifty percent; 377 votes clearly exceeds the number required for a quorum.

. We note that the Februaiy 11, 2015 Election Results do not state how many of the votes were by members voting in person or the number of absentee votes which were made by proxy. Nor is there any evidence in the record as to the breakdown of these votes.

. The By-Laws contemplated that, after the initial Board of Directors’ term expired, the number of members of the Board of Directors would increase to five. (By-Laws, Sec. 4.6).

. The By-Laws provide, in Art. 2, Sec. 2.2, that "[t]he Owners shall be entitled to one vote for each Lot or Dwelling.”

. They differ only with respect to their individual capacities; Jack Sutton is the former Secretary of the ETPOA; while Dr. Baft Farris served as its Parliamentarian.

. We note that our jurisprudence indicates that, in a quo warranto proceeding seeking to "oust directors of a corporation, the court may investigate whether or not the votes were legally cast.” Thornton v. Carthon, 47,948, p. 9 (La.App. 2 Cir. 5/15/13), 114 So.3d 554, 560.

. As evidenced by the affidavit of Ms. Fanning, who is not a party to this lawsuit, she "had the responsibility to receive and review proxies from the ETPOA members.” She fin-ther attested that, of the 377 votes counted in connection with the election, all of the'votes were either filled out by members present at the meeting or made by proxy through members in good standing.

.In their affidavits, both Mr. Sutton and Dr. Farris attested to the fact that “in violation of Section 3.8, no certification or other verification of proxies to determine if they were duly executed was conducted prior to the attempted election.” (Emphasis supplied). A review of Art. 3, Sec. 3.8 of the By-Laws reflects that there is no procedure set forth by which proxies are to be certified or verified or to determine that they are "duly executed.”

. The letter was attached to defendants’ PreTrial Memorandum in this summary proceeding. Plaintiffs have not contested the authenticity of this document and did not file a motion to strike the document at any time prior to the hearing.

. Again, there is nothing in the record which demonstrates how many of the proxies were submitted by means other than through the Secretary of the ETPOA.

. The order of business is as follows: a. Roll call and certification of proxies; b. Proof of notice of meeting of waiver of notice; c. Reading of minutes of preceding meeting; d. *393 Reports of officers, if any; e. Reports of committees, if any; f. Election of appointment of inspectors of election; g. Election of trustees; h. Unfinished business; i. New Business.

. The minutes of the meeting do not identify the author and contain a typographical.error (listing the date as February 1, 2015). The body of the minutes clearly reflect that the meeting was held on February 11, 2015.